METROPOLITAN CASUALTY INS. CO. v. EDWARDS. (No. 1500.)

(Court of Civil Appeals of Texas. Amarillo. March 19, 1919. Rehearing Denied April 9, 1919.)

1. INSURANCE ☞665(5) — ACCIDENT INSURANCE—INJURY—EVIDENCE.

In action on accident policy, evidence that insured had no hernia previous to his fall while attempting to alight from an automobile, that a hernia developed just after the fall, and a doctor's opinion that in all probability it was due to the fall, justified jury in finding that accident was sole cause of injury, "exclusively and independently of all other causes," within a policy provision.

2. INSURANCE ☞665(5) — ACCIDENT INSURANCE—DISABILITY.

In action upon accident policy, evidence held to support jury's finding that insured was wholly disabled and prevented from performing any and every kind of duty pertaining to his occupation for six weeks.

3. INSURANCE ☞524—ACCIDENT INSURANCE —"TOTAL DISABILITY."

Total disability does not mean absolute physical inability to transact any kind of business pertaining to insured's occupation; it is sufficient if injury is such that common care and prudence require him to desist from business so long as it is reasonably necessary to effectuate a cure, and that for a few days insured did not discover seriousness of injury would not disprove that he was not wholly disabled within meaning of policy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Total Disability.]

4. APPEAL AND ERROR ☞1058(2)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

In action upon accident policy exclusion of testimony of insured's physician that injury did not result directly and solely from insured's fall on an automobile door was harmless, where his other testimony gave jury the benefit of physician's opinion that striking the door did not actually produce the hernia.

5. EVIDENCE ☞181—BEST EVIDENCE—ACCIDENT INSURANCE POLICY.

In action upon accident policy classifying insured as a traveling salesman, for which the rate was $20 per year, providing that rates fixed and filed with insurance department should

control, testimony that a witness knew the rate, where it was not shown that proposed rate was so fixed and filed, or that it could not be obtained from insurance department, was properly excluded.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by Fred L. Edwards against Metropolitan Casualty Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

T. L. Camp, J. N. Freeman, and Spence, Haven & Smithdeal, all of Dallas, for appellant.

Seay & Seay, of Dallas, for appellee.

HUFF, C. J. Appellee, Edwards, sued appellant insurance company on an accident policy in the principal sum of $3,750, which was alleged to be in force when he was injured, directly, solely, and exclusively through accidental means. He alleged about September 21, 1916, in attempting to alight from an automobile, that he slipped, stumbled, or fell on and against said automobile, or curb at or near said automobile, and as a result received bodily injuries directly, solely, and exclusively through accidental means, which tore, lacerated bruised, and mangled his side, together with other parts of his body and limbs, which caused a nervous shock and strain upon his system, producing pain and suffering. That clause 2 of the policy reads:

"If said injuries shall not result as specified in clause 1, but directly, solely, and exclusively and independently of all other causes, shall, within two weeks from the date of the accident, continuously and wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation, the company will pay the insured the weekly indemnity above specified for the entire period of such total disability."

That under the policy he was entitled to indemnity in the sum of $25 per week, within two weeks of the accident, to wit, immediately thereafter plaintiff was continuously and wholly disabled and was prevented from performing the duties pertaining to his occupation, from the 21st day of September, 1916, to the 1st day of December, 1916, 10 weeks aggregating the sum of $250. The appellee also set out clause 3, which reads as follows:

"If such injury shall not result as specified in clause 1, but directly, solely, exclusively, and independent of all other causes, shall within two weeks from the date of the accident, or immediately following total disablement, continuously disable and prevent the insured from performing some one or more important daily duty or duties pertaining to his occupation, the company will pay the insured one-half of the week-

ly indemnity above specified for the period of such partial disablement, not exceeding fifty-two weeks."

That immediately following his total disablement that he has been disabled and prevented from performing one or more important duty or duties pertaining to his occupation for a period of 52 weeks, totaling $650. That clause J, paragraph 4, reads:

"If such injuries shall necessitate the removal of the injured to a regularly incorporated hospital, the weekly indemnity payable for a period not exceeding ten consecutive weeks, during which the insured shall be confined to said hospital, shall be double the amount provided in clause 2, provided that insured shall not make claim under clause 8 on account of the same injuries."

That the injuries necessitated his removal to such hospital October 1, 1916, and that he was there confined for a period of two weeks; that under this clause he was entitled to an additional $25 per week for the time thus confined, which totaled the sum of $50. He also sought to recover 12 per cent. penalty and $500 as attorney's fees. It will not be necessary to set out the appellant's answer or pleadings at this time. The case was submitted to a jury upon special issues. The jury found that appellee's fall, solely, exclusively, and independent of all other causes, produced the injury complained of; that the fall was accidental; that appellee was continuously and wholly disabled and prevented from performing any and every kind of duty pertaining to his occupation for six weeks; that he was prevented from performing some one or more important duty or duties pertaining to his occupation for 46 weeks; that he was confined in a regular incorporated sanitarium two weeks; that he was entitled to reasonable attorney's fees, which would be $250. The trial court rendered judgment for $775, the principal due on the policy, 12 per cent. penalty, amounting to $93, and $250 attorney's fees, totaling $1,180.

[1] The first assignment is that the answer to special issue No. 1 is contrary to the evidence, and should be set aside for the reason that the evidence shows that the injury of which the appellee complains could not have been produced and was not produced, directly, solely, exclusively, and independently of all other causes from the fall which appellee alleges he had. The evidence in this case shows that the appellee fell in trying to alight from his car, and in doing so struck the corner of his car door, or the latch which is on a Ford car, which struck him in the groins, where a hernia was shown thereafter to have developed. He complained at that time, but did not call the appellant's agent's attention to it until possibly the next day; whereupon he was referred to the company's physician, Dr. Carroll, who testified that he examined him and found a hernia and operated on him for it. The testimony will authorize the finding that appellee was a strong, healthy young man, and had engaged, with his brothers previous to the injury, in healthy and vigorous exercise and labor; that he had never had a pain at that place previous to his fall. We find no evidence that he was diseased to any extent which would have caused the injury, and find only theories presented by the expert witnesses as to the probability or possibility of it having been produced in the manner alleged, or whether it was done in some other way. There appeared to be no bruises on the outside of his person found by the doctor at the time he examined him, and the doctor expressed it as his opinion that the corner of the door or latch, striking with sufficient force to cause hernia, would break the tissue or cause a bruise or evidence of such force under the surface of the skin. The following question was asked the doctor:

"Irrespective of this sharp point, in other words, your idea is that the door and the sharp point to the instrument would not have as much to do with it as the slipping and falling in this jerking position? Answer: Yes, sir; that is it. My idea is that the fall against the sharp instrument did not produce the direct hernia; that it was some other factor, else there would have been what I said—a bruise and bleeding condition of the tissues on the inside. The fall, if the hernia came on immediately after this, the type we found, then it is presumptive the fall, and later that the strained condition that occurred afterwards and perhaps in the fall, might have been the factor in bring it down; I rather think that it would. If there had not been any sharp point there, and he got the fall like that, I would place just as much stress on the fall producing the hernia as if the sharp point had been there. If it occurred immediately afterwards, I would naturally attribute it to that as a factor."

At another place he testified:

"In investigating conditions of hernia that come as the result of decay or diseased condition as compared with those that come from violence, I do not know just the percentage of them that occur on the right-hand side, but many more than on the left side. I hardly think it is as high as 97 per cent., according to the best authorities, but I am not sure. I should say offhand, according to my best recollection, at least 75 per cent. At least 75 per cent. of those hernias coming without accident or violence occur on the right side. This one was on the left side; that is correct. This hernia had another peculiar thing about it—it was very small—it is not a rupture at all. That is a mistaken thing; it is a hernia, but most people call it rupture, but it is not a rupture; it is merely parting of the tissues that separate, and let something go through, and laymen frequently call it a rupture. The whole thing means a separation of the issues, which lets a man's intestines or entrails come through; no matter what you call it, it is a separation of

the tissues which permits the inside to stick out. This is a very small one."

He said at another place:

"There was no evidence on his side as to searching for laceration or a red spot, or anything like that; there is none; nothing out of the ordinary except a hernia. If the boy had been hit by this steel clasp against the skin but for the clothes it would have been a very simple matter and a very easy matter for that to jam up there and hurt enough to produce a hernia, without leaving any scar or discoloration on the skin outside; that is possible."

After a lengthy hypothetical question was presented to Dr. Crow, he testified: -

"Taking what has been outlined about this case to me, I believe this hernia was caused in an effort to save himself in the act of falling, before striking the door; the transmission of force. He continued until he did strike the door. I should say that this hernia might, and in all probability did, happen prior to the time he hit the door; that the act of falling, and the actual fall, I cannot say that, as no human being can possibly determine just when the hernia occurred."

The fact that the appellee had nothing of the kind previous to the fall, that the hernia developed just after the fall, that he was healthy before, etc., and that in the doctor's opinion in all probability it was due to the fall, we think the jury were authorized to find that the accident was the sole cause of the injury, independent of all other. North American Accident Insurance Co. v. Miller, 193 S. W. 750; Fidelity Casualty Co. v. Joiner, 178 S. W. 806.

[2, 3] The second assignment assails the finding of the jury that appellee was wholly disabled and prevented from performing any and every kind of duty pertaining to his occupation for six weeks. While the evidence indicates for two or three days after the injury appellee was not aware of the seriousness of the injury, and shows that he did attempt to work around his place, it nevertheless shows that he was disabled at least to some extent. The evidence clearly shows that the injury then received was serious, requiring an operation which confined him to the sanitarium for two weeks, and after leaving the place he was unable to do any work of consequence, unless it was such as making out tickets and the like. The appellant appears to rely upon a report made by appellee of his condition, which the company secured, and in which the appellee denominated his injuries as partial. Dr. Carroll testified with reference to such statement:

"If he ever wrote out a statement that about three or four or five weeks afterwards, as to his thinking, he was well, he is mistaken about it. The hernia has recurred, and he will have to wear a truss or have it fixed; it is right down there now."

We think the facts presented an issue as to how long he was totally disabled, and that the jury were not without evidence supporting their finding. It would serve no useful purpose to quote the testimony at any length on this point. As to the rule for ascertaining the meaning of total disability, the Joiner Case, supra, quotes that it—

"does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It is sufficient if his injuries were of such a character that common care and prudence required him to desist from the transaction of any such business so long as it was reasonably necessary to effectuate a cure. This was a duty he owed to the insurer as well as to himself."

The mere fact that for a few days appellee may not have discovered the seriousness of his injury does not disprove that he was not, within the meaning of the policy, wholly disabled, when the evidence of the doctor indicates that common care required him to desist from the transaction of any such business. This court's views are expressed in the Miller Case, supra, 193 S. W. 750, paragraphs 1 and 8, Fidelity & Casualty Insurance Co. v. Mountcastle, 200 S. W. 862; I. T. A. v. Rogers, 163 S. W. 421.

[4] The third assignment complains at the action of the court in excluding testimony of Dr. Carroll, who had treated the appellee, as follows:

"That in his opinion, as an expert, the injury which the plaintiff claims to have suffered was not the result directly, solely, and exclusively, and independent of all other causes, of the fall on the automobile door."

Objection made at the time is that it was not a question of expert testimony, but that the question involved the very issue which the jury was called upon to try. The court sustained the objection, and doubtless ruled as he did under the holdings and in accordance with the case of I. T. A. v. Rogers, 163 S. W. 421. We will not discuss whether the particular evidence offered should have been admitted. We think, however, there was no injury shown by its rejection, as Dr. Carroll testified:

"You want my opinion as to whether this hernia I found in the operation was due to the injury described, due to the fall or blow that he received on the side, or whether it might have been due to some other cause. My opinion would be that it would be more likely to result from some other cause than that from the direct blow, for the reason that there was no bruises or laceration of the tissues; in other words, from other factors, probably more so, than this blow against his side."

He also testified:

"I don't believe a severe blow on the wall [of the stomach] would produce a rupture without leaving some evidence of a bruise, without some other factor attending."

Again:

"My idea is that the fall against the sharp instrument did not produce the direct hernia; that it was some other factor, else there would have been what I said—a bruise and bleeding condition of the tissues on the side."

He further testified:

"I don't believe I have ever seen a case where a sudden blow produced a hernia, but the reports of the men who have seen them, and which I have seen, is that it would incapacitate a man. The accepted view of it is that a sufficient blow to produce hernia would immediately incapacitate him, and usually does just that." .

This testimony, it occurs to us, gave the jury the benefit of the doctor's opinion as to whether striking the door actually produced the hernia or whether it was from some other cause.

[5] The fourth and fifth assignments assert error in refusing to permit the witness Weams, the state agent of the company, to testify that he knew of his own personal knowledge that the occupation of running a filling station classified as a more hazardous occupation by defendant company than that of a traveling salesman, and that the premium rate for said occupation was greater than the rate charged for the occupation of traveling salesmen, and would have testified to the rate charged by the company for both classifications. The appellee objected to the testimony on the ground that the policy provided the manner and method by which a change of occupation reduced the liability of the defendant, to wit, according to the company's rates and classification of rates last filed prior to the occurrence of the injury for which indemnity is claimed with the insurance department of the state, wherein the assured resides, etc. It appears from the policy that appellee was insured as a traveling salesman, and at the time of his injury appellee was secretary of the Edwards Gasolene & Service Station; that he did other things around the station necessary to be done when there were no men around to do it, including cranking cars, taking off and putting on tires, etc. The appellant pleaded that the premium paid and required for salesmen in the stationery business was $20 per annum, and that such business was rated as select; that for ordinary risk it was $34 per year, which was fixed prior to and existed at the time of the alleged accident; that, if he was entitled to recover at all, he could only recover 20/34 of the benfits stated in the policy. The clause of the policy relied on reads:

"If the insured shall engage in any occupation classed by this company as more hazardous than that stated in this policy (ordinary duties about the residence of the insured or while engaged in recreation excepted), the company's liability hereunder shall be limited to such proportion of the indemnity as herein provided as the premium paid will purchase at the rate and within the limits fixed by the company for such increased hazard, according to the company's rates and classification risk last filed prior to the occurrence of the injury, for which indemnity is claimed, with the insurance department of the state wherein the insured resides."

It will be seen the company's rates were to be fixed and filed with the insurance department and that the rates last so filed should control. It was sought to show by the witness that he knew the rate and what it was, etc. The contract of insurance made the rate last filed with the insurance department before the accident the controlling rate, and the evidence of the indemnity to be paid under such rate. We believe the court ruled correctly in rejecting the offered evidence. It was sought to prove orally by the witness that he knew the rate when the policy provided the rates should be fixed and filed, and it is not shown that the proposed testimony was the rate so fixed and filed, or that it could not be obtained from the insurance department.

The case will be affirmed.

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes