## LLOYDS GUARANTEE ASSUR. v. SHEFFIELD et al.

### No. 6002.

Court of Civil Appeals of Texas. Texarkana.
March 13, 1943.

Rehearing Denied March 25, 1943.

Chrestman, Brundidge, Fountain, Elliott & Bateman, of Dallas, for appellant.

White & Yarborough, of Dallas, for appellees.

JOHNSON, Chief Justice.

This is a workman's compensation case in which appellant, Lloyds Guarantee Assurance, is the alleged insurer. Appellees, Mrs. Lois Sheffield and Woodrow Waylon Sheffield, widow and minor child of W. W. Sheffield, deceased, are the claimants. W. W. Sheffield, the alleged employee, sustained fatal accidental injuries while working at a sawmill ownd by F. A. Ealand doing business as Ealand Lumber Company, the alleged employer. Trial to a jury upon special issues resulted in a verdict and judgment for appellees. The insurer appealed.

Mrs. R. M. Sheffield, mother of deceased, was also a party claimant in the suit, but did not appeal from the judgment awarding compensation to appellees.

Appellant's 1st and 2d points raise the contention that the trial court erred in overruling appellant's motion for a directed verdict and in overruling appellant's motion for judgment non obstante veredicto. Both motions are based on the alleged ground that the evidence is insufficient to show that W. W. Sheffield, deceased, was an employee of F. A. Ealand; the contention being that the evidence shows conclusively or as a matter of law that deceased was an employee of B. W. Meek and that B. W. Meek was operating the sawmill for F. A. Ealand in the capacity of an independent contractor, and not as an employee of Ealand in the capacity of superintendent or mill foreman.

The definitions of an employee and of an independent contractor are clearly stated in Smith Bros. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145, to which reference is here made. The opinion in that case shows that in determining the question of whether a contract of employment has created the relationship of employer and independent contractor or has created the relationship of employer and employee, the decisions of our courts emphasize the fact as to whether or not the employer has released or has retained the right of control over the details of the work to be done and the means by which it is to be accomplished. Where the employer has released that right, and holds merely the power of control over the results or end to be obtained, the relationship of independent contractor has been created on the part of the person engaged, otherwise it is a contract of hire and the relationship of employer and employee is created.

The contract in question between Meek and Ealand was oral. Its express terms as testified to by Meek are very meagre. Ealand did not testify. The substance of Meek's testimony as to the terms of the contract is that Ealand employed him to "run" the sawmill, and agreed to pay him $2 per thousand for all lumber sawed, less the amount of wages paid employees engaged in its operation. As to the conversation that occurred between Meek and Ealand leading up to the contract of employment, Meek testified that he went to the sawmill seeking employment and approached Ealand:

"Q. You went in and you told him you were an experienced sawmiller and asked him for a job, didn't you, told him you heard he needed a man? A. Yes, I believe I told him that.

"Q. And he told you that he did need a man? A. That's right.

"Q. And then he told you that he wanted you to run a sawmill for him, didn't he? A. Yes, he asked me to run the mill, asked me about contracting it.

"Q. He told you he wanted a man to run the mill for him, he wanted to hire a man to run the mill? A. Well, I asked Mr. Ealand about running the mill on a salary basis.

"Q. Well, did he tell you he wanted to hire somebody to run the mill? A. Yes, he told me he wanted somebody to run it, and asked me how would it suit me to run it by the thousand, and I told him it would suit me better than to work for a salary.

"Q. You told him it would suit you better than to work for a salary? A. Yes, sir.

"Q. The facts of the business is, it is just as broad as it is long? A. That's right.

"Q. Whether you worked by the piece or by the day? A. Yes."

The testimony as to the terms of the contract of employment is not sufficient to determine the question of whether Ealand released or retained the right of control over the details of the work to be done and the means by which it was to be accomplished. So it becomes necessary in the solution of the question to consider not only the testimony as to the express terms of the contract when made, but also the testimony as to the control actually exercised by Ealand following the agreement. Southern Underwriters v. Samanie, 137 Tex. 531, 155 S.W.2d 359. At the time of and prior to the agreement in question, Ealand owned and operated the sawmill, a planing mill and lumber yard at the location involved. Power for the sawmill and planing mill was furnished by two connected steam boilers. After the agreement with Meek, Ealand continued in sole supervision, control and operation of the boilers, upon which the sawmill was dependent for power. Meek further testified that he went to work—took charge of the sawmill—on December 3, 1940; that W. W. Sheffield was there on the job at the time, but the mill was not running and that Sheffield was not actually working that day; that Meek "picked up" and used the same crew that had been working at the mill, including Sheffield; that he put Sheffield to operating the saw; that Sheffield was injured on December 13, 1940, and died three days later; that until after Sheffield was killed, Ealand paid all the employees engaged in operating the mill, after deducting their social security tax, and reported them as employees of Ealand; that Ealand kept the books; that after Sheffield was killed the mill was rebuilt and the manner of paying the employees was changed in that thereafterwards Ealand would give Meek a check for the amount of the wages and Meek would cash it and pay the employees himself; that Meek hired and fired the employees; that Ealand furnished the logs and gave Meek instructions as to the quantity and dimensions of lumber to be sawed; that if Ealand had told Meek to cut it a little thicker or thinner, Meek would have obeyed instructions; that Meek was supervising the cutting of the lumber; that Ealand came around once in a while but never had much to say about anything; that Meek would go to Ealand's office located on the premises and they "would talk things over pretty often" but never dis-

agreed on anything; that all Ealand told Meek was that he wanted him to make good lumber, and would give Meek orders for the dimensions wanted. Veolus Farris testified that he was working for Ealand at the sawmill at the time Sheffield was injured; that Meek was foreman of the mill; witness was setting blocks for the saw and Sheffield was sawing when a belt slipped off, and in attempting to replace the belt Sheffield was injured; that witness had worked with Sheffield about two weeks; that Meek was boss of the mill but Ealand would give them orders also; that sometimes Ealand would come around when the steam was low and tell the employees working at the mill to get more slabs to increase the steam—"sometimes I would be setting blocks and the bolt would be narrow and he (Ealand) would tell us to put something on the blot", to regulate the thickness of the lumber; when something would go wrong, Ealand would tell the employees or Meek what to do; that all the workmen at the mill took orders from Ealand whenever he would tell them to do things around there.

Troy Sheffield, brother of deceased, testified that he had worked at the mill one day about a week before W. W. Sheffield was injured; that Ealand in person hired him and told him what he wanted done, told him to trip logs for the mill; that Meek was superintendent of the mill at that time.

From the testimony as a whole, of which the above is the substance, we do not think the court would have been authorized in saying that, as a matter of law, Meek was an independent contractor. Expressed in other words, the question of whether under the testimony W. W. Sheffield was an employee of F. A. Ealand was one of fact which was properly submitted to the jury. Texas Employers Ins. Ass'n v. Owen, Tex.Com.App. 298 S.W. 542; Southern Underwriters v. Samanie, supra.

Appellant's 3rd point raises the contention that the trial court erred in sustaining appellee's objections to the testimony of appellant's witness W. S. Gay, offered for the alleged purpose of showing that the policy upon which this suit is based, issued by appellant to F. A. Ealand doing business as Ealand Lumber Company did not cover the sawmill. The classification of operations covered by the

policy, as expressed in the instrument, reads as follows:

will be noted that the classification of operations above quoted from the policy is-

"Classification of Operations

| | Estimated Total Annual Remuneration | Rate per $100 of Remuneration | Estimated Premium |
|---|---|---|---|
| 1 (a) #2731—Planing or Moulding Mills— (Lumber Yards, building material dealers, or fuel and material dealers to be separately rated) | $2400.00 | $4.05 | $97.20 |
| #8232—Lumber Yards—saw mill—including Drivers, Chauffeurs and their Helpers.. | 3600.00 | 2.24 | 80.64." |

Appellant offered to show by W. S. Gay, who, for purposes of the bill of exceptions, testified in substance as follows: That he was the soliciting agent representing appellant in procuring Ealand's application for the policy in question; that at the time of soliciting the application he was familiar with the properties Ealand had on that location; that Ealand had a planing mill and lumber yard, and there was a sawmill on the premises; that witness had in his hands, and from which he was testifying, a "code book" or manual classifying the various risks and rates to be applied according to orders promulgated and adopted from time to time by the Board of Insurance Commissioners of Texas, and that Code No. 8232 covered a "lumber yard" but did not cover a "sawmill"; that a sawmill was covered by Code No. 2710 and carried a higher rate than a lumber yard; that at the time he solicited the appliction from Ealand nothing was said by either of them as to whether or not the sawmill was to be covered by the policy; that witness understood the situation there with respect to Ealand's planing mill, lumber yard and sawmill, and knew that Ealand operated the sawmill "by a man by the name of Boney under an alleged independent contract"; that witness later solicited Boney and obtained a policy for him covering the sawmill under "Code No. 2710-Sawmills." The policy issued by appellant to Boney was offered in evidence, and appellee's objections thereto were sustained. It further appears from Gay's testimony that the book from which he was testifying was not the original or a certified copy of the purported orders of the Board of Insurance Commissioners, nor was it otherwise authenticated. We do not believe that the court erred in excluding the testimony of Gay, in the circumstances in which it was offered. It

sued by appellant to Ealand, when interpreted in the light of the plain and accepted meaning of the words used, purports to include the "sawmill" as much so as it does the "lumber yard." If by reason of some order of the Board of Insurance Commissioners the words used in the classification of operations are to be construed in a different light from their usual meaning, whereby the sawmill is not to be included or is excluded from the coverage, we believe that fact should be shown by a properly certified copy of such order. Vernon's Texas Civil Statutes, Arts. 4682, 4695, 3720 and 3722; 36 T.J. pp. 646, 651, 664.

The judgment of the trial court will be affirmed.