**SHOCK et al. v. MRS. RAGSDALE'S FOODS CO.**

No. 12037.

Court of Civil Appeals of Texas. San Antonio.

March 1, 1950.

Rehearing Denied March 29, 1950.

Herman G. Nami, San Antonio, Joe Burkett, San Antonio, for appellants.

Lang, Byrd, Cross & Ladon, San Antonio, for appellee.

NORVELL, Justice.

This is an appeal from a judgment for $6,841.50, rendered upon special jury findings in favor of Jack N. Pitluk and T. A. Lambert, doing business as Mrs. Ragsdale's Foods Company, and against Fretwell Shock, individually, and Talley Transfer & Storage Company, a partnership composed of said Fretwell Shock and C. A. Talley.

The Talley Transfer and Storage Company is engaged in the business of operating a public warehouse for the storage of goods and commodities. The jury found that said company failed to deliver to appellee (the plaintiff below) forty-four barrels of cotton seed oil which had theretofore been stored with appellants and receipts issued therefor. The jury also found that each barrel contained 426 pounds of oil, and that the failure to deliver said oil to appellee upon demand was the result of gross neglect on the part of appellants' employees.

The trial judge found "from the uncontradicted and undisputed evidence, and therefore as a matter of law, that the high-

est intermediate market value of the oil in question between the date of conversion and the date of filing suit in San Antonio, Bexar County, Texas, was Thirty-six and a half (.36½c) cents per pound."

Appellants present two points. They contend that the trial court erred in permitting hearsay testimony of T. A. Lambert with reference to the market price of the cotton seed oil involved, and that the court erred in permitting appellee's counsel "to interrogate the witness C. A. Talley (one of the partners in the transfer and storage company) with reference to whether or not he was operating a bonded warehouse, because same insinuated and intimated to the jury that appellants were protected by a bond from any loss which they might incur."

We think appellants' first contention must be overruled upon authority of the Supreme Court's decision in Cochran v. Wool Growers Central Storage Company, 140 Tex. 184, 166 S.W.2d 904, wherein it was held that a finding of market wool was supported by evidence, inasmuch as Cochran, the owner of the wool allegedly converted, testified that he was familiar with the market value of wool in San Angelo, Texas, and that said value was 22c per pound.

In the present case, T. A. Lambert, one of the partners of Mrs. Ragsdale's Foods Company, testified that the company manufactured salad dressing and that cotton seed oil was the principal ingredient thereof. The witness stated that he was acquainted with the reasonable market value of such oil in San Antonio, Texas. He said that he read the market quotations of commodities every morning, because he was "interested in commodities, which included, of course, cotton oil"; that the "National Provisioner," a trade journal, and the Chicago Journal of Commerce carried recognized market quotations, and that Proctor and Gamble also put out a daily sheet of quotations covering cotton seed oil. Lambert also testified that the quotations contained in the papers or magazines were generally recognized and accepted by the trade throughout the United States, and that from such quotations, the market value of cotton seed oil in San Antonio could be

ascertained. The witness first answered that the highest market value during the period from August 8th and December 24 of 1947 was 33½c per pound. However, apparently, after refreshing his memory by looking over quotations contained in the National Provisioner and Chicago Journal of Commerce, he stated that the market value was 36½c per pound, and this figure was accepted by the trial judge.

In our opinion, Lambert, being a partner in a firm which purchased cotton seed oil and manufactured salad dressing therefrom, and having stated that he knew the market value of such oil in San Antonio, was qualified to state his opinion with reference thereto. Trade journals are generally recognized sources of information covering market values, and the record contains direct testimony to this effect. The fact that it is shown that quotations in trade journals have been consulted and considered as a source of knowledge of market value does not render the opinion of a witness as to market value inadmissible under the best evidence rule. In Texas & Pacific Ry. Co. v. Donovan, 86 Tex. 378, 25 S.W. 10, the Supreme Court said: "The last objection presented to the judgment of the court of civil appeals is that it erred in refusing to sustain defendant's objection to the testimony of Voliva. The witness testified to the market value of the sheep in Chicago on a given day. His information was derived from trade journals and telegrams received from Chicago almost daily at the time, *but he could not say that he had them for the particular day*. Testimony of market value is largely a matter of opinion, and in this case was not obnoxious to the objection made." (Italics ours.)

In this case, as in Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904, 908, no attempt was made to contradict the claimant's testimony as to market value. It was stated in the Cochran case that, "The Storage Company was engaged in the business of storing and selling wool, and could have easily controverted this testimony *(of market value) if it was untrue or inaccurate. It should, therefore, be taken as true, as a matter of law.'"

Even if Lambert's testimony be not regarded as conclusive as a matter of law, it, nevertheless, constituted substantial evidence of market value and no jury finding was requested upon the issue. The trial judge necessarily passed upon Lambert's credibility as a witness, and his finding in regard thereto is binding upon us. Cochran v. Wool Growers Central Storage Co., supra; Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79. Appellants' first point is overruled.

We next consider appellants' second point. Appellants were operating a public warehouse which was necessarily a bonded warehouse, as Article 5569, Vernon's Ann. Civ.Stats., provides that "The person receiving a certificate, as herein provided for, shall file with the county clerk granting same, a bond payable to the State of Texas, with good and sufficient surety, to be approved by said clerk, in the penal sum of five thousand dollars, conditioned for the faithful performance of his duty as a public warehouseman which bond shall be filed and preserved in the office of such county clerk."

The fact that appellants were operating a bonded warehouse was first brought out by appellants' attorneys in the course of their cross-examination of Jack N. Pitluk, one of the partners of Mrs. Ragsdale's Foods Company. Thereafter, upon cross-examination, C. A. Talley testified, without objection, that being a bonded warehouseman meant that "you are under bond." Some time later during the course of this cross-examination, and after the witness had again stated that the Talley Transfer and Storage Company was a bonded warehouse, he was asked to explain to the jury what was meant by the term "bonded warehouse." An objection to this question was overruled by the court. Talley's testimony thereafter was practically the same as that which he had previously given without objection. He stated that his company was paying for a bond; that he was not in the bonding business, and that in order to give the details of what the term "bonded warehouse" meant, or state definitely his knowledge in regard thereto, the "documents" would have to be looked over.

In our opinion, there is no showing of prejudicial error. The term "bonded warehouse" is one of common use, and employed by warehouse companies in their commercial advertising. The fact that the warehouse was bonded was first brought into the case by appellants' questioning of witnesses. The testimony of Talley given after objection did not materially enlarge upon that given before objection. Appellants' second point is overruled.

The judgment is affirmed.