**Roy J. FREEMAN, Appellant,**

v.

**COMMERCIAL UNION ASSURANCE COMPANY, Ltd., Appellee.**

**No. 7043.**

Court of Civil Appeals of Texas.

Texarkana.

Oct. 7, 1958.

Rehearing Denied Nov. 11, 1958.

Sidney C. Lee, Texarkana, for appellant.

Norman C. Russell and Atchley & Russell, Texarkana, for appellee.

FANNING, Justice.

Roy J. Freeman and D. H. Lee sued Commericial Union Assurance Company, Ltd., upon a policy of fire insurance issued by said company insuring Freeman and Lee against loss by fire of a certain building owned by Freeman and mortgaged to Lee. The amount of the policy was $3,750, and Lee's debt, secured by a mortgage on the building, was greater than the amount of the policy. The insurance company first denied liability as to both Freeman and Lee but later admitted liability as to Lee and paid him $3,750, the full amount of the policy.

The insurance company then filed its second amended original answer alleging that it was not liable to Freeman for various reasons and prayed judgment to determine that it was not liable to Freeman under such policy and that it should be subrogated to Lee's rights as a mortgagee to the extent of the payment which it had made to Lee and praying for a lien to the extent of such payment.

Among the defenses asserted by the insurance company it was contended in effect that the policy in question had been forfeited and voided as to Freeman by reason of the violation by Freeman of basic conditions in the policy in that Freeman insured the premises on the representation that same were to be used and occupied as a tenant dwelling and that in fact the property was used in conducting a furniture business and that the hazard incidental to the risk on said premises had been increased by reason of Freeman's use of same in the conduct of a business and that such hazard increase was within the knowledge and control of said insured and was not usual and incidental to the occupancy as described and contemplated in the said policy. The policy in question in the section entitled "Description of Property" and above the term "occupancy" listed the insured building in question as "Tenant Dwelling." The policy in question contained certain basic conditions, among which were the following:

*"Line 1. Basic Conditions:*

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance, or the subject thereof, or the interest of the insured therein * * *

*"Line 31. Basic Conditions:*

"Unless otherwise provided in writing and added hereto, this Company shall not be liable for loss occurring * * *: (a) while the hazard is increased by any means within the knowledge and control of the insured, provided such increase in hazard is not usual and incidental to the occupancy as hereon described; or (b) while a described building, whether intended for occupancy by owner or tenant is vacated beyond a period of 30 consecutive days; or * * * (d) following a change in ownership of the insured property; or (e) while any other stipulation or condition of this policy is being violated."

Following the payment of $3,750 to Lee and following the filing of the insurance company's second amended original answer, Freeman and Lee took nonsuits and the trial proceeded on the remaining matters. Trial was to a jury. The jury in response to the special issues submitted found in effect: (1) That a certain conveyance of the building and lot in question from Freeman to Avery Murrah on October 22, 1956, was without consideration; (2) that such conveyance did not result in Murrah receiving any beneficial interest; (3) that the conveyance in question was in accordance with an agreement between Freeman and Murrah that Murrah would hold the ownership to such land at the pleasure of Freeman; (4) that at or prior to such conveyance Freeman and Murrah agreed that Murrah would reconvey the property in question to Freeman upon Freeman's request; (5) that the conveyance in question was based upon an agreement between

Freeman and Murrah that such deed was to be held by Murrah for the use and benefit of Freeman; (6) that on or about December 25, 1956, the date of the destruction of the house located on the premises in question, Freeman was not the owner of such house and the property upon which such was situated; (7) that Freeman made use of the house prior to its destruction by fire on or about December 25, 1956, for the purpose of operating a furniture business; (8) that in so using said house the hazard incidental to such use was increased; (9) that the hazard was so increased by means within the knowledge and control of Freeman; and (10) that such increase in hazard was not usual and incidental to the occupancy of said house as a tenant dwelling. The trial court, upon the findings of the jury and upon additional findings of the court on the undisputed evidence in the case, granted the insurance company's motion for judgment and rendered judgment for the insurance company against Freeman as prayed for by the company. Freeman's amended motion for new trial was overruled and he has appealed.

Appellant by his Points 1, 2, 3 and 4, contends that the trial court erred in permitting Marvin Self, a witness for appellee, to testify, over plaintiff's objections, to the effect that if property was insured for use as a tenant dwelling and the tenants moved out and after that the owner stored furniture in the house thereon and used such house for the sale of furniture and storage of furniture, that there would be a different rate for the insurance and that this rate would be higher; as to the component parts going to make up the rate of charge of the fire insurance policy involved in the suit; that when a building is occupied for commercial purposes it is rated under mercantile, and in this connection a building with a composition roof would have a basic charge of $1.15, the key rate charge being $1, making a total of $2.15, that there would then be experience credit, that on the date of the policy involved in this suit, the ex-

perience credit was 36% of $2.15, that the rate on the policy involved in the suit would be $1.37 for $100 of insurance for one year, and that for three years (as the policy was written for), it would be $3.15, and that on the basis of the insurance issued in the amount of $4,500 the rate for a 3-year policy for $4,500 on a furniture store would have a premium of $153.80, less a fire record credit of 10% or $15.38, making a $138.42 net premium. Appellant Freeman made various objections to this testimony to the effect that same was not the best evidence and that the best evidence would be the orders promulgated by the Texas Insurance Commission and the rate book promulgated by the Texas Insurance Commission.

The witness Marvin Self, in being qualified, testified to the effect that he was an insurance underwriter, had been in the insurance business for over 23 years, had been an insurance examiner for eight years and had had three years' experience as a local agent. He further testified to the effect that he estimated rates nearly every day, and upon being interrogated as to the charges made for fire insurance upon a building used for commerical purposes, he gave the charges involved in computing the cost of such insurance. Self testified as to the rates as above outlined and also testified as follows:

"Questioned by the Court:

"Q. You are testifying from your own personal knowledge, are you not, as to these rates? A. My own personal knowledge and experience gained over some twenty-odd years."

"Direct Examination Continued:

"Q. You are or are not referring to any written memorandum or any other paper to recall these rates? A. No."

Following the above testimony, the witness Self further testified on voir dire by appellant's counsel as follows with appellant making the hereinafter quoted objection thereto:

"Mr. Lee: If the Court please, may I take him on voir dire?

"The Court: Yes.

"Questioned by Mr. Lee:

"Q. Are you testifying to matters contained in orders of the Texas Insurance Commission? A. I don't know what you mean orders. We have what is furnished us. It contains all the rules and rating schedules.

"Q. Is that promulgated by the Texas Insurance Commission? A. Yes, and furnished to all agents.

"Q. Are you testifying to what is contained in that book that you mentioned? A. That is where I get the information. We don't have any source except in that book put out by the Board of Insurance Commissioners.

"Mr. Lee: If the Court please, we renew our objections to this testimony as to rates for the reason that the book containing those regulations and rates is the best evidence as to what they are.

"The Court: Objection over-ruled.

"Mr. Lee: Note our exception."

No attempt was made by appellee to introduce in evidence the officially promulgated rates of the Texas Insurance Commission or the duly promulgated rate book of the Texas Insurance Commission. Appellee's position, among other things, is that the witness Self was simply interrogated on the various differences in the rates upon the uses inquired about based upon his independent recollection and knowledge and that such evidence was admissible and further that the testimony of Self was merely collateral to the principal issues in the case and that by reason thereof the best evidence rule, even if it were applicable, would not make such evidence inadmissible.

In Vise v. Foster, Tex.Civ.App., 247 S.W.2d 274, wr. ref., n. r. e., a witness was permitted to testify as to his personal knowledge of the market prices of East Texas crude oil. It appeared that a written memorandum had been sent to him quoting such prices; however, he was held to be a competent witness and the objection to his testimony was held to go to its weight and not to its admissibility.

In Shock v. Mrs. Ragsdale's Foods Co., Tex.Civ.App., 228 S.W.2d 353, wr. ref., n. r. e., a witness testified that he was acquainted with the reasonable market value of salad oil in San Antonio, Texas, and the court held that the fact that he had consulted quotations in trade journals and considered them as a source of his knowledge of market value did not render his opinion on market value inadmissible under the best evidence rule.

In Haynes B. Ownby Drilling Co. v. McClure, Tex.Civ.App., 264 S.W.2d 204, 207, wr. ref., n. r. e., it was stated:

"The next point is that the court erred in permitting Pete Plemons, Production Superintendent for defendant Mabee Drilling Company, to testify that as far as he knew the Railroad Commission required an oil well driller to put salt water produced in drilling back in the ground. The objection to this evidence was that the Rules of the Commission were the best evidence and that the witness was not qualified to answer.

"We do not consider this testimony as reflecting any effort to prove the contents of a rule of the Railroad Commission but rather to test the knowledge and qualifications of the witness preliminary to proving the practices of defendant Mabee which were material to the issue of negligence of such company."

In Salinas v. Salinas, Tex.Civ.App., 77 S.W.2d 568, 569, wr. dis., it is stated: "The testimony of a person having knowledge as to the facts evidenced by book accounts and able to testify to them from memory has always been admissible."

It has been held that experts familiar with the contents of standard life insurance mortality tables may testify as to their knowledge of such without production of such books and tables. See the following authorities: St. Louis Southwestern Ry. Co. of Texas v. Hall, Tex. Civ.App., 106 S.W. 194; Ft. Worth & D. C. R. Co. v. Spear, Tex.Civ.App., 107 S.W. 613; St. Louis B. & M. R. Co. v. Davis, Tex.Civ.App., 262 S.W. 923, wr. dis.; Missouri-Kansas-Texas R. Co. of Texas v. Webb, Tex.Civ.App., 229 S.W.2d 204, wr. ref., n. r. e. In St. Louis, B. & M. R. Co. v. Davis, supra (262 S.W. at page 923, 927) it was stated:

"Both the witnesses Keller and Hensley had been in the life insurance business for a number of years, and based their testimony about appellee's expectancy solely upon the American Table of Mortality, which were shown to be the standard tables in use by the old line life insurance companies generally; such testimony was properly received, Ft. Worth & D. C. Railway Co. v. Spear, Tex.Civ.App., 107 S.W. 613; St. Louis Southwestern Railway Co. of Texas v. Hall, Tex.Civ.App., 106 S.W. 194; Texas & N. O. Railway Co. v. Kelly, 34 Tex.Civ.App. 21, 80 S.W. 1073; Chamberlayne on Evidence, vol. 1, §§ 730 and 892."

Of course, the original rate orders or certified copies of the rate orders promulgated by the Texas Insurance Commission would be completely authoritative as to such rates, would be the best evidence available on such rates, and would of course prevail over any secondary evidence as to any rates which were not in accord with such official rates. Here, however, the witness Self testified positively as to those rates based upon his own knowledge thereof gained in his 23 years' experience as an underwriter, examiner and agent in the

insurance business as well as his knowledge thereof gained from the rate books of the Texas Insurance Commission. Mr. Self's testimony to the effect that he knew (based upon his knowledge above outlined) that the fire insurance rates for a building used for a furniture business were higher than the rates for a building used as a tenant dwelling, is a matter on its face which would reasonably appear to be true. Also there is nothing in the record that in any way contradicts the truth of Mr. Self's testimony. In view of our holding which follows to the effect that the evidence in question did not form the foundation of the cause or a defense thereto but was collateral thereto, it is our best judgment that such evidence was admissible and that objections to such testimony would really relate more to the weight to be given such testimony than to its admissibility under the facts in this case.

■ It is well-settled Texas law that evidence relating to a matter which does not form the foundation of a cause, or the defense thereto, but is collateral to the issue, does not properly fall within the best evidence rule, and although secondary evidence in its character, cannot be excluded on the ground that primary evidence was available. See the following authorities: Heidenheimer v. Beer, Tex.Civ.App., 155 S.W. 352, wr. ref.; Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395, wr. ref.; Longnecker v. Ward County Water Improvement Dist., Tex.Civ.App., 8 S.W.2d 306; Cocke v. Southland Life Ins. Co., Tex.Civ.App., 75 S.W.2d 194, wr. ref.

It is our view that while the testimony of the witness Self to the effect that the fire insurance rates for a building used for a furniture business were higher than the fire insurance rates on a tenant dwelling was material on the issue of whether the hazard in question was increased, Self's testimony in question did not form the foundation of any of the insurance company's defenses, but was collateral thereto. Consequently, such evidence would not violate the best evidence rule in the situation involved here.

We conclude that appellant's Points 1, 2, 3 and 4 do not show reversible error under this record, and the same are respectfully overruled.

Appellant's Point 5 reads as follows:

"The error of the court in overruling appellant's exception No. 1 to paragraph three of appellee's second amended original answer, which objection and exception was as follows:

" 'Plaintiff Roy J. Freeman excepts and objects to paragraph three of defendant's second amended original answer wherein it is alleged that this plaintiff has willfully concealed or misrepresented material facts or circumstances concerning said insurance, or the subject thereof or the interest of the insured therein "and that this plaintiff did insure and represent that said premises were occupied and to be occupied as a tenant dwelling where in fact the property was used in conducting a wholesale and retail furniture business," for the reason that it is not alleged in such second amended original answer the date upon which defendant discovered the falsity of the representations allegedly so made, and that within a reasonable time after discovering the falsity of the representation so made, it gave notice to plaintiffs Roy J. Freeman or D. H. Lee or to one of them, that it refused to be bound by the contract or policy herein declared upon.' "

By its second amended original answer, appellee alleged that appellant violated certain basic conditions of the policy, among which was to the effect that Freeman did insure and represent that said premises were occupied and to be occupied as a tenant dwelling where in fact the property was used in conducting a wholesale and retail furniture business "and that it was not liable for the loss" because the

hazard incidental to the risk on such premises has been increased by reason of Roy J. Freeman's use of the same in the conduct of a business * * *." Among appellant's exceptions were the exceptions above quoted in appellant's Point 5 above.

Appellant contends that the provisions of Article 21.17 of the Texas Insurance Code V.A.T.S., are applicable and that his above exceptions to appellee's second amended answer should have been sustained. It is our opinion that the warranty by Freeman in the policy that the premises were to be used as a tenant dwelling was a contractual warranty and that therefore Article 21.17 (and Article 21.16) of the Texas Insurance Code V.A.T.S., had no application to the suit at bar. See National Fire Ins. Co. of Hartford v. Carter, Tex.Com.App., 257 S.W. 531, and Fidelity Union Fire Ins. Co. v. Pruitt, Tex. Com.App., 23 S.W.2d 681. Appellant's Point 5 is respectfully overruled.

Appellant contends by Points 19 to 30 incl., that there was no evidence to support the jury's answers to Special Issues Nos. 7, 8, 9 and 10, that the evidence was insufficient to support the jury's answers to Special Issues Nos. 7, 8, 9 and 10, and that the jury's answers to Special Issues Nos. 7, 8, 9 and 10 were against the greater weight and preponderance of the evidence and were clearly wrong. We have carefully reviewed the record and are of the opinion that appellant's Points 19 to 30, incl., should be overruled, and same are accordingly overruled.

Appellant contends by Points 16, 17 and 18, that there was no evidence to support the jury's answer to Special Issue No. 6, that the evidence was insufficient to support the jury's answer to Special Issue No. 6, and that the jury's answer to Special Issue No. 6 was against the greater weight and preponderance of the evidence and was clearly wrong. Also by its Point 15, appellant contends that the answers of the jury to Special Issues No. 1,

2, 3, 4 and 5 conflicted with the jury's answer to Special Issue No. 6, which conflict appellant contends was irreconcilable and was with respect to a definite fact material to the judgment.

The jury found in response to Special Issue No. 6 that appellant was not the owner of the destroyed house and the property upon which it was situated, yet it also found in response to Special Issues Nos. 1, 2, 3, 4 and 5 that there was no consideration for the October 22, 1956 deed from appellant Freeman to Murrah, that Murrah did not receive any beneficial interest in the land from such conveyance, that the conveyance was in accordance with an agreement between appellant Freeman and Murrah that the latter would hold the ownership of the land at the pleasure of appellant and would reconvey the land to appellant when appellant requested he do so, and that appellant signed such deed based upon an agreement with Murrah that such deed was to be held by the latter for the use and benefit of the appellant Freeman. The only evidence produced by appellee with respect to Issue No. 6 was the deed from Freeman to Murrah. This deed on its face conveys the property from Freeman to Murrah, constitutes some evidence on such issue and we think is sufficient to support the jury's answer to Special Issue No. 6. Also, after carefully examining all of the evidence in this record in the light of the rule of law announced by the Supreme Court of Texas in the case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, it is our best judgment that the jury's answer to Special Issue No. 6 is not against the greater weight and preponderance of the evidence and is not clearly wrong. Appellant's Points Nos. 16, 17 and 18 are respectfully overruled.

Also any conflict between the jury's answers to Special Issues Nos. 1 to 5, inclusive, with the jury's answer to Special Issue No. 6, would not materially affect the judgment and is not that character of irreconcilable conflict which would result

in reversible error in this case under the rule set forth by the Supreme Court of Texas in the case of Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W. 2d 985, 991, wherein the Court stated:

"* * * To require a judgment entered on a verdict containing conflicting answers to be set aside, the conflict between the answers must be such that one answer would establish a cause of action or defense, while the other would destroy it. * * *

"To apply this test, the court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all of the rest of the verdict, and if, so considered, one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict. It is essential that the party seeking to set aside a verdict on the ground of conflict must be able to point out that one of the conflicting answers of the jury, in connection with the rest of the verdict except the issue with which it conflicts, necessarily requires the entry of a judgment different from that which the court has entered."

It was found in Issue No. 6 that Freeman was not the owner; Issues Nos. 1 to 5, inclusive, established that Freeman, although not having record title in him, was the owner of such property for purposes contemplated in the policy. Under these findings appellee would not have been entitled to a judgment by reason of its particular defense of non-ownership on the part of appellant. However, appellee had another defense as set forth in Special Issues No. 7, 8, 9 and 10, and the jury's answers to Special Issues Nos. 7, 8, 9 and 10 being amply supported by the evidence, the judgment of the trial court in favor of appellee is correct under the rule announced by the Supreme Court in Little

Rock Furniture Mfg. Co. v. Dunn, supra, and other cases which follow said case, such as the cases of Siratt v. Worth Construction Co., 154 Tex. 84, 273 S.W.2d 615; Nelson v. Dallas Railway & Terminal Co., Tex.Civ.App., 302 S.W.2d 436, wr. ref., n. r. e., and Nichols v. Red Arrow Freight Lines, Tex.Civ.App., 300 S.W.2d 740, wr. ref., n. r. e. Appellant's 15th point is respectfully overruled.

Each and all of appellant's remaining points have been carefully considered, none of them is deemed as presenting reversible error under the record in this case and said remaining points are respectfully overruled.

The judgment of the trial court is affirmed.

CHADICK, C. J., concurs.

DAVIS, J., dissents.

DAVIS, Justice (dissenting).

The opinion I filed herein on October 7, 1958, is withdrawn and the following opinion is substituted therefor.

I dissent. The holding of the majority on appellant's points 1, 2, 3 and 4 (best evidence rule) is in direct conflict with the holding of this Court in the case of Lloyds Guarantee Assurance v. Sheffield, Tex.Civ. App., 170 S.W.2d 327, wr. ref., w. o. m., and other cases on identically the same question. First, this testimony from appellee's witness Self bore upon the issue of increased hazard, *an ultimate issue,* not a collateral issue, and was offered for the sole purpose of showing that the hazard was increased when the use of the property was changed from that of a tenant dwelling to that of a furniture business, and the rates as fixed by the Insurance Commission for each hazard was different. The classification of the operations covered by the policy in the Sheffield case was "Lumber yards—sawmill." It purported to include the insured's sawmill the same as his lumber yard.

One of defendant's witnesses was not permitted to testify from a "Code book" or Manual that he had before him classifying the various risks and rates to be applied according to orders promulgated and adopted by the Board of Insurance Commissioners of Texas, not an original nor authenticated copy, which "Code book" showed that Code No. 8232 covered a "lumberyard" but did not cover a "sawmill"; and that a "sawmill" was covered by Code No. 2710 and carried a higher rate than a "lumber yard." In holding that the rejection of the testimony was not error, this Court said in part:

" * * * It further appears from Gay's testimony that the book from which he was testifying was not the original or a certified copy of the purported orders of the Board of Insurance Commissioners, nor was it otherwise authenticated."

The Sheffield case and the case at bar cannot be distinguished.

The opinion is also in conflict with the following cases: Metropolitan Casualty Ins. Co. v. Edwards, Tex.Civ.App., 210 S.W. 856, wr. dis. *(defendant not permitted to show by parol evidence what premium it charged for two classifications of insurance);* Hillin v. Hagler, Tex.Civ.App., 286 S.W.2d 661, no wr. hist. (Parol evidence not admissible to prove the amount of rainfall as shown by U. S. Weather Bureau Records); Chambless v. Woods, 5 Cir., 1950, 182 F.2d 342 (parol evidence by local rent attorney as to maximum allowable rental, disapproved); Smith v. Briggs-Weaver Machinery Co., 63 Tex.Civ.App. 285, 132 S.W. 954, no wr. hist. (the Secretary of State's deposition was not admissible to prove a matter of fact which was shown by the records of his office); City of Dallas v. Milum, Tex.Civ.App., 200 S.W.2d 833, 839, wr. ref., N.R.E. (a witness' testimony was not admissible to prove what he was paid for eggs delivered to a warehouseman "according to the records of our City"); Bass v. Mitchell, 22 Tex. 285, and Stafford v. King, 30 Tex. 257 (the Commissioner of the General Land Office could not testify as to records in his office over objection); Wells Fargo Express Co. v. Williams, Tex.Civ. App., 71 S.W. 314, no wr. hist. (a letter from a Railroad Commissioner was not proper evidence to show the commission rates on a certain class of goods); Sabine Land & Improvement Co. v. Perry, Tex.Civ. App., 54 S.W. 327, no wr. hist. (it was error to permit plaintiff to testify as to the contents of a government report and railway report for the purpose of showing quantity of stock shipped); Wagner v. Porter, Tex.Civ.App., 56 S.W. 560, no wr. hist. (the action of a city council in delegating to the mayor the right to make a certain contract in behalf of city, and in ratifying the contract when made, can only be established by the minutes of the meeting when such action was had, and cannot be established by parol testimony, when it does not appear that such record is lost or destroyed); James v. Gaal, Tex.Civ.App., 282 S.W. 298, wr. ref., n. r. e. (the minutes of the probate court are the best evidence of whether a sale of realty was confirmed), and Panhandle & S. F. R. Co. v. Sanderson, Tex.Civ.App., 218 S.W. 540, wr. dis. (oral testimony as to the contents of the official Railway Equipment Register was not admissible over objections that it was not the best evidence).

I humbly hope it is no answer, as the majority holds, that since "there is nothing in the record that in any way contradicts the truth of Mr. Self's testimony," the admission of this rankly secondary hearsay evidence as to an official act of a Governmental Agency ought to be approved. This is the first time in my life that I have ever heard of such rule attempted to be applied. It is not just new in this state, it is new in all legal jurisprudence. And may God forbid it to become the law that a litigant will have to disprove any fact that is permitted to be proved by illegal, or incompetent evidence before he can complain about it. If that is now the law, all rules of evidence heretofore existing have just been abolished.

None of the authorities cited by the majority sustain their holding on the admissibility of the secondary evidence as to what rates the Texas Insurance Commission had promulgated for the uses of tenant houses and furniture businesses. Market prices, facts evidenced by book accounts, the entries of which were made by witnesses, or about which a witness had an independent recollection, expert testimony and life expectancies are not comparable to official records or official acts of a public agency such as the Texas Insurance Commission, or the Texas Railroad Commission. If parol evidence is admissible in this case, it will be admissible in all cases from here on, whether or not better evidence exists.

If the holding in Haynes B. Ownby Drilling Co. v. McClure, Tex.Civ.App., 264 S.W. 2d 204, 208, wr. ref., n. r. e., relied upon by the majority, is that rules of the Texas Railroad Commission may be shown by parol, then I disagree with it. However, I do not so construe the holding. In the Ownby case, the question and answer were allowed for the purpose of testing the knowledge and qualifications of the witness. The court said in that case:

"* * * We do not consider this testimony any effort to prove the contents of a rule of the Railroad Commission but rather to test the knowledge and qualifications of the witness preliminary to proving the practices of defendant Mabee *which were material to the issue of negligence of such company* * * *" (Emphasis added.)

As a matter of law, the Insurance Commission fixes the rates of insurance in this state. As a matter of common knowledge, rates change frequently. They have not been the same for the whole 23 years Mr. Self has been in the insurance business. As a matter of common knowledge, rates are different in the different cities in this state. Mr. Self did not testify to any rate for the City of Texarkana. His personal knowledge did not make or fix the rate and the only place he could have gotten the of-

ficial rate for the City of Texarkana would have been from the official publication from the Insurance Commission; not from his personal knowledge.

In the case at bar, appellee was not testing the knowledge and qualifications of its witness Self as the following excerpt from his testimony, elicited by appellee's counsel, shows:

"Q. As I understand from your testimony, the matter of the amount of the premium that is paid by an individual is governed by the *hazard* or the *risk* covered? A. That is the principle for all rates—the hazard involved.

"Q. If the hazard involved is greater, *is there a considerable greater premium?* A. *The rate is higher.*" (Emphasis added.)

Appellee was not testing its witness' knowledge and qualifications, but was trying to show the fire hazard was greater in the case of a furniture business than in the case of a tenant dwelling by proving the rate to be higher; and it did this by parol evidence that the insurance rate, *as prescribed by the Texas Insurance Commission,* was higher in the case of furniture business than a tenant dwelling.

The "best evidence" rule applies to any and all writings of a public character, and where such writings are accessible, parol evidence of their contents is excluded. 32 C.J.S. Evidence § 804, p. 733. See also 32 C.J.S. Evidence § 808, p. 737, where a number of types of official records and documents is given to which the best evidence rule applies.

Self did not testify that he acquired his knowledge from the original or a certified copy of an order of the Insurance Commission; neither was his testimony corroborated by the original or certified copy. There is no evidence that the original or a certified copy was not available. This was testimony on an ultimate issue. It is the only evidence that the rate was higher for the use of the house for a furniture store

than that of a tenant dwelling, and definitely resulted in injury to Freeman.

I note here that the house was used as a tenant dwelling, according to the evidence, from the date of the issuance of the policy (October 25, 1954, a three-year policy), until June or July, 1956. Appellee alleged that the policy had been forfeited and voided because Freeman had *"wilfully concealed or misrepresented material facts or circumstances concerning said insurance."* (Emphasis added.) The change of use was made long after the effective date of the policy. There is no evidence that appellant wilfully concealed from or misrepresented to appellee any fact before the policy was issued, or after the policy was issued and before the loss, or even after the loss. And, there is no finding by the jury that such occurred. I would sustain appellant's first four points.

The majority has overruled appellant's points 5 and 6 upon the ground, as I understand it, that the use of the premises described in the policy was a contractual warranty to which Articles 21.16 and 21.17, Vernon's Ann.Tex.Insurance Code do not apply. I agree that these points (5 and 6) should be overruled, but not for the reasons stated. In the policy, the words "tenant dwelling" appear in the blank over the word "Occupancy." The policy merely describes the use of the insured building as that of a tenant. It is in no sense a warranty, contractual or otherwise. It is shown by the record that on the policy date the premises were being used as a tenant dwelling. There is no provision in the policy that appellee was not to be liable on the policy if the building was not being used as a tenant dwelling at the time of the loss. If the change had reduced the hazard, surely appellee would have been liable. Therefore, the case is not like Fidelity Union Fire Ins. Co. v. Pruitt, Tex.Com.App., 23 S.W.2d 681, in which the policy insured the building while occupied *by the owner and not otherwise,* nor National Fire Ins. Co. of Hartford v. Carter, Tex.Com.App., 257 S.W. 531, in which the policy provided it

was void *if the interest of the insured be other than unconditional and sole ownership;* which two cases are relied upon by the majority.

There are no jury findings in this case that will support a judgment on the theory of "increased hazard." Special Issues Nos. 7 and 8, and the affirmative answers of the jury, are as follows:

> *Special Issue No. 7:* "Do you find from a preponderance of the evidence that Roy J. Freeman *made use of the house* prior to its destruction by fire on or about December 25, 1956, *for the purpose of operating a furniture business?"*

> *Answer:* "Yes."

> *Special Issue No. 8:* "Do you find from a preponderance of the evidence that *in so using said house* that the hazard incidental to *such use* was increased?"

> *Answer:* "Yes." (Emphasis added.)

Now, just what do we have? Appellee's only allegations concerning the use was that "the hazard incidental to the risk on said premises has been increased by reason of Roy J. Freeman's use of the same in the conduct of a business." It did not plead that the "use of the house as a business" increased the hazard incidental to the "use of the house as a business." Yet, that is all that was asked and found by the jury in Issues 7 and 8. Special Issue No. 7 inquired if "Freeman made use of the house * * * for the purpose of operating a furniture business." The jury said he did. Special Issue No. 8 inquired if "the hazard incidental to 'such use' (for the purpose of operating a furniture business) was increased." The phrase "such use" in Special Issue No. 8 could only refer to the "use" (operating a furniture business) inquired about in Special Issue No. 7. There is no issue or jury finding that the use of the house for the purpose of a furniture business increased the hazard over the hazard in the sense of the house as a tenant

dwelling. Appellant's points on these issues should be sustained. Further, Special Issue No. 7 inquires about the use of the house "prior" to the date of the fire. To support a judgment for appellee there must be a jury finding of use that increased the hazard over that of a tenant dwelling "at the time" of the fire; the increased hazard must still exist at the time of the loss.

Another thing, the record does not show whether or not the sum of money appellant had paid to appellee for the policy was insufficient to pay the alleged increased rate on the policy from the date the change of use was made until the date of the fire. There being no evidence of fraud, or offer of refund of any unearned premium on the policy, appellee may be estopped to deny liability. The law will not allow an insurance company to collect a premium on a policy, keep the premium and defeat any part of its liability.

I would reverse the judgment of the trial court and remand the cause.

On Motion for Rehearing.

FANNING, Justice.

We think our holding in this case to the effect that the admission in evidence by the trial court of the testimony of the witness Self, as complained of by appellant's Points 1, 2, 3 and 4, did not constitute reversible error under the record in this case, is a correct holding and is supported by the following additional authorities which were not cited in our original opinion, to wit: Philadelphia Underwriters Agency of Fire Ass'n of Philadelphia v. Brown, Tex.Civ. App., 151 S.W. 899, wr. dis.; Wigmore on Evidence, 3rd Ed., Vol. IV, Sec. 1191; McCormick, Handbook of the Law of Evidence, 1954, p. 413 and Sec. 209 p. (424–425).

The case of Philadelphia Underwriters Agency of Fire Ass'n of Philadelphia v. Brown, supra, 151 S.W. 899, 902, involved a suit on a fire insurance policy with the insurance company defending on the ground that plaintiff had other insurance on the same property in violation of the policy contract. Defendant offered proof by a witness that he heard plaintiff say on the night of the fire that he had other insurance coverage, and also on cross-examination plaintiff was asked if he had additional insurance. The evidence in question was excluded by the trial court on the ground that the other policy would be the best evidence. The appellate court held this to be error, stating:

"The existence of other insurance was only collaterally involved, and might have been proved by parol. This was not an effort to show the contents of other written policies, but merely to establish that such policies had been issued and were in existence."

In Wigmore on Evidence, supra, (3rd Ed. Vol. IV, Sec. 1191) it is stated:

"Production of the original may be dispensed with, in the trial court's discretion, whenever in the case in hand the opponent does not bona fide dispute the contents of the document and no other useful purpose will be served by requiring production."

In McCormick, supra, (p. 413) it is stated:

"It is manifest, however, that the test of 'collateralness' is an exceedingly vague one, not dependent upon a technical analysis of the formal issues made on the pleadings, but rather upon the probability of substantial room for controversy as to the very terms of the writing. If no such dispute seems probable, then the trial judge should have the power to relax the rule requiring the document to be produced and allow its net effect to be summarily stated. Here as elsewhere in the application of this purely administrative rule,

the trial judge's discretion should be reviewed only for grave abuse."

In McCormick, supra, (Sec. 209, p. 424–425) it is stated:

"209. Review of Rulings Admitting Secondary Evidence,

"It will be seen from the earlier sections of this chapter that the requirement of the production of original writings, with the several excused for nonproduction and the exceptions to the requirement itself, make up a fairly complex set of regulations for administration by the trial judge. Mistakes in the application of these rules are, understandably, not infrequent. The purpose of this system of rules, on the other hand, is simple and practical. That purpose is to secure the most reliable information as to the contents of documents, when those terms are disputed. A mystical ideal of seeking "the best evidence" or the "original document," as an end in itself is no longer the goal. Consequently when an attack is made, on motion for new trial or on appeal, upon the judge's admission of secondary evidence, it seems that the reviewing tribunal, should ordinarily make inquiry of the complaining counsel, 'Does the party whom you represent actually dispute the accuracy of the evidence received as to the material terms of the writing?' If the counsel cannot assure the court that such a good faith dispute exists, it seems clear that any departure from the regulations in respect to secondary evidence must be classed as harmless error."

Since the testimony of the witness Self did not form the foundation of the cause or a defense thereto, but was collateral thereto, for this reason the same was clearly admissible. Furthermore, as hereinbefore pointed out, the truth of the testimony in question was not disputed and there was no substantial controversy about the correctness of the rates and testimony in question, and the admission in evidence of the testimony in question by the trial court clearly under this record would not constitute reversible error in any event for the reasons stated in McCormick, Sec. 209, supra.

We have carefully considered all of appellant's contentions in his motion for rehearing and are of the opinion that same should be overruled. We adhere to our affirmance of this cause and respectfully overrule appellant's motion for rehearing.

CHADICK, C. J., concurs.

DAVIS, J., dissents.