**PICKENS v. HARRISON et al.**
No. 12302.

Court of Civil Appeals of Texas. Galveston.
Feb. 7, 1952.

Rehearing Denied Feb. 28, 1952.

See also, 231 S.W.2d 812.

---

Andrews, Kurth, Campbell & Bradley and Raymond A. Cook, all of Houston, Vance & Vance, of Edna, and Hamblen & Bobbitt, Jas. F. Bobbitt, and A. C. Lesher, Jr., all of Houston, for appellant.

Sample & Bell, S. G. Sample, and W. H. Hamblen, all of Edna, Fulbright, Crooker, Freeman & Bates, Leon Jaworski and Austin C. Wilson, all of Houston, for appellees.

GRAVES, Justice.

This appeal is from a $94,316.00–judgment of the 24th District Court of Jackson County, in favor of the appellees (Gerard A. Harrison and C. F. Combs), as their interests appeared, against the appellant (W. L. Pickens), entered on the pleadings, the evidence, and the verdict of a jury on some 28 Special Issues submitted to it, as for negligently damaging the appellees' 1949 rice crop and their land, upon which it had been planted, by proximately causing the land and the crop thereon and the irrigation well, upon which it was dependent, to have become incompatibly surcharged with salt water from appellant's oil wells.

The trial court stated no findings of fact nor conclusions of law, otherwise than as incorporated in its judgment, which granted the appellees' motion therefor, entering it upon the jury's verdict, together with an agreed stipulation between the parties as to certain facts; since the appellee Combs owned the title to the land involved, while the appellee Harrison was his lessee, and since, with no differences between them, they made common cause against the appellant for the over-all damages the two sued for, the trial court apportioned the total recovery between them, of $77,828.80 to Harrison, and $16,487.20 to Combs. While somewhat unique in its applications—the gravamen of the controlling damage having been the alleged ruining of an irrigation water well, upon which the appellees were dependent for the watering of their rice crop—the nature of the suit was one for negligence, so plead, tried, and adjudicated below; in other words, the appellees specifically charged the appellant with liability for negligently damaging their 1949 rice crop, and the 359.7 acres of land on which it was planted, by precipitating, or negligently permitting the casting thereon, of a tremendous volume of salt water from his oil wells, in such a manner as to ruin their irrigation well, and to contaminate all of the fresh water sands, upon which it was dependent for its supply.

In sum, it is thought the material over-all issues of fact and law controlling the controversy might be summarized this way:

(1) Was appellant so negligent in permitting the precipitation, or encroachment of, salt water from his neighboring oil wells upon the land and rice crop thereon as to contaminate the fresh water sands contiguous to the irrigation well, upon which the appellees were dependent for their necessary irrigation?

(2) If so, did such negligence proximately cause damage to such land and rice crop for the year 1949, and, if so, in what amount?

The large number of special issues, in much detail, submitted these inquiries to the jury, which answered all of them in the appellees' favor.

After reviewing the huge record brought into this Court by the appellant, and carefully considering its attacks upon the verdict and judgment so rendered, it is the conclusion of this Court, out of the vast fabric of testimony presented, much of it from expert sources, that no lack of sufficient evidence to sustain any of the jury's findings has been shown.

■ Indeed, it is not the task of this appellate tribunal to do other than to determine whether or not the evidence was sufficient to support such findings of the jury upon the controlling issues of fact, as embodied in the court's charge; when the charge is looked to, and the large number of inquiries made of the jury are considered, it is not doubted that they as a whole properly submitted the controlling issues raised by the pleadings and the evidence of both parties, and, as indicated, that no one of the findings upon such controlling issues has been found to lack support in the evidence.

The rice land here involved—part of a 1380 acre tract owned by the appellee Combs—was located in Jackson County, some one and one-half to two miles distant and down-grade from the appellant's oil wells, which were a part of the Little Kentucky oil field, the general area being farming territory; one of such oil wells, known as the "Huseman" well, in particular, at the time of this occurrence had been shown to be making, in July, of 1949, at the time this rice crop was planted, from 80 to 90% volume of salt water.

In protest here, against the judgment so adverse to it, appellant presents some 19 points-of-error, which, it is thought, may be reduced to these groups:

(1) Nos. 1, 2, and 3, complaining of the court's refusal to admit in evidence a letter of August 29, 1949, from Dr. L. C. Kapps to appellee Harrison, relating to an analysis of the salt content of the Harrison irrigation well;

(2) Points Nos. 4 to 17, inclusive, objecting to issues submitted by the court to the jury, and complaining of its refusal to submit others;

(3) Points 18 and 19, inclusive, relating to what was known as the "Chernosky well", and what was called the "Huseman pit."

In the state of the record, it is determined that none of these presentments should be sustained.

■ The trial court properly excluded the Dr. L. C. Kapps' letter, because it was shown to have been completely irrelevant to any issue in this suit, having been hearsay in character; that is, having been from a third person not a party to this suit, hence, directly violative of the rule announced in Texas Jur., Vol. 17, pages 743 to 744, Evidence, Section 321.

■ In the second place, none of the objections to the trial court's submitted special issues, and its refusal to submit others tendered by the appellant, were material to the controlling issues of fact raised by the pleadings of the parties, and the evidence admitted by the court under them; all these material issues were, as recited, submitted by the court to the jury in the special issues it gave. The court submitted such special issues conformably to the rule declared by the Supreme Court in Wichita Falls, etc., Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79.

To concrete the the matter further, the appellees thus declared upon their cause of action for negligence:

"1. Appellant was guilty of negligence in failing, in disposing of salt water, to protect fresh water sands from pollution, in violation of Rule 20 of the Railroad Commission.

"2. Appellant was guilty of negligence in emptying salt water into pits dug down to and into a fresh water sand.

"3. Appellant was guilty of negligence in leaving a large quantity of salt water standing in an absorption pit dug down to and into a fresh water sand.

"4. Appellant was guilty of negligence in emptying salt water into open drainage ditches flowing into Lunis Creek."

In view, further, of the testimony appellees offered in support of such a case sounding in negligence, inclusive of apparent admissions by the appellant to the effect that he had put salt water in pits dug down into the fresh water sand under the appellees' irrigation well, and that he had emptied salt water into open ditches that flowed into Lunis Creek, it seems clear

that his requested special issues were properly refused, as having been immaterial to the cause for negligence so submitted by the court's given issues. Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221; Cosden Oil Co. v. Sides, Tex.Civ. App., 35 S.W.2d 815; Stewart v. Birchfield, 15 Cal.App. 378, 114 P. 999; and Long v. Louisville & N. R. R. Co., 128 Ky. 26, 107 S.W. 203, 13 L.R.A.,N.S., 1063.

Appellant's assignments, insisting that the salt water from what was known as the "Chernosky Pit," in part, at least, was shown to have contaminated the irrigation well of the appellee Harrison,—rather than that all the contaminating water came from his own wells,—appear to be without any evidence to support them; indeed, the testimony of his own expert witnesses, Mead, Jensen, and Lynch, appears to this Court to have been to the effect that, because of its location, geography, and differences in levels, caused the movement of water from it to be to the east of, and away from, the appellees' irrigation well.

So much for the appellant's assignments.

To the contrary of their purport and contentions, it is the conclusion of this Court that, as the trial court found them and held, the findings of the jury—to the effect that the salt water, and all of it, came from appellant's oil well—were fully established in the testimony; not only so, but, further, that, under the law—since whether that negligence was also a proximate cause of the appellees' damages, was a question of fact,—the court was left no alternative than to make the adjudication it did. Blanks v. Southland Hotel, Tex. Sup., 229 S.W.2d 357; Chatham v. Jones, 69 Tex. 744, 7 S.W. 600; Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063; Texas Bus Lines v. Whatley, Tex.Civ.App., 210 S.W.2d 626; and Benoit v. Wilson, Tex., 239 S.W.2d 792; International & G. N. R. R. Co. v. Casey, Tex.Com.App., 46 S.W.2d 669.

These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.

MONTEITH, C. J., not sitting.