**HAYNES B. OWNBY DRILLING CO.**

v.

**McCLURE.**

No. 10170.

Court of Civil Appeals of Texas.

Austin.

Jan. 13, 1954.

Rehearing Denied Feb. 3, 1954.

McMahon, Springer, Smart & Walter, Abilene, for appellant.

E. C. Grindstaff, Ballinger, Smith & Foy, San Angelo, for appellee.

HUGHES, Justice.

This is a suit for damages brought by appellee, Boyd McClure, for the benefit of the separate estate of his wife, Stella McClure. The defendants were appellant, Haynes B. Ownby Drilling Company, and Guy Mabee Drilling Company. The damages sought were the depreciated market value of 642 acres of land alleged to have resulted from the negligence of defendants in permitting salt water to escape from premises upon which they were conducting drilling operations and to percolate into and pollute a water well on the 642 acre tract of land.

Trial was to a jury which returned a verdict favorable to appellee and upon which the court rendered judgment in his behalf.

Appellant presents nine points of error, six of which relate to objections to the court's charge, two to the admission of testimony and one relating to jury misconduct.

We will first discuss the assignments pertaining to asserted errors in the charge of the court.

Special Issues Nos. 1, 2, 3, and 4 were as follows:

"From a preponderance of the evidence do you find that salt water from the pit at Haynes B. Ownby Drilling Company's Herring well No. 1 escaped from said pit and penetrated the sub-surface stratas?

"From a preponderance of the evidence do you find that salt water escaped from the pit at Haynes B. Ownby Drilling Company's Herring well No. 1, reached and polluted plaintiff's fresh water well?

"From a preponderance of the evidence do you find that it was negligence on the part of Haynes B. Ownby Drilling Company to permit salt water to escape from its pit at its Herring well No. 1, if you have found it did so?

"From a preponderance of the evidence do you find that such negligence, if you have found, on the part of Haynes B. Ownby Drilling Company in permitting salt water to escape from its pit at its Herring well No. 1, if you have found it did so, was a proximate cause of the salt water pollution in plaintiff's fresh water well?"

Each of issues 2, 3 and 4 was preceded by an instruction not to answer unless the preceding issue had been answered in the affirmative.

The objections to these four issues were identical and were to the effect that the issues were (a) too broad and permitted the jury to speculate as to the matters inquired about and did not limit the inquiries to the specific acts of negligence alleged in appellee's petition and (b) such issues do not prescribe any standard of conduct for the drilling of the well by defendants or with respect to the handling of the salt water therefrom and (c) because such issues inquire regarding the escape of water from the well pit without regard to a determination by the jury of any causative factor therefor, and particularly without regard to any determination by the jury that such water escape was due to any tortious conduct of appellant.

Appellee made the following allegations of negligence on the part of defendants:

"(a) In that they negligently caused, suffered, permitted and allowed salt water to escape into the draw and the sub-surface strata thereof and thus into plaintiff's said well, as hereinabove alleged.

"(b) In that they negligently and carelessly caused, permitted and allowed said salt water to collect in surface pits from which they knew, or in exercise of ordinary care should have known, that said salt water would escape and flow and percolate in such a way as to pollute plaintiff's fresh water supply, as hereinabove alleged.

"(c) In that they negligently and carelessly failed and omitted to adopt any approved method, or any effective method in disposing of said salt water, to prevent pollution of fresh water strata, and in this connection, failed and omitted either to return such salt water into the well from which it was pumped and flowed, or by an abandoned well or other means, into the strata from which it flowed or was pumped, or to place the same in a water tight container capable of holding it and preventing it from flowing away or escaping, or to provide any other effective collection of the same to prevent its escape.

"(d) In that they negligently and carelessly failed and omitted to seal the surface of the pits into which salt water was caused, permitted and allowed to flow, or to provide adequate flares to cause evaporation thereof."

The gist of appellant's complaints about these issues is, as we understand it, that it was error for the court to submit only one ground of alleged negligence when several were pleaded and that the one submitted was too general and amounted to a submission of mere general negligence. We are not in accord.

All grounds of negligence pleaded and not submitted to the jury are waived, there being no contention that any of such grounds is established by undisputed proof. Furthermore, the failure to submit any of such grounds would not be harmful to appellant.

Our only real concern is with the issue submitted. If it is a "global" issue then it is condemned under the recent Supreme Court decision in Roosth & Genecov Production Co. v. White, 262 S.W.2d 99.

In Turner v. Big Lake Oil Co., Tex.Civ. App., 62 S.W.2d 491, 492, affirmed 128 Tex. 155, 96 S.W.2d 221, the jury found that defendants "permitted salt water to overflow from their salt ponds and lakes" and onto plaintiff's lands but there was no subsidiary finding that this constituted negligence. The court held that, absent a finding of negligence, liability of defendants was not established.

In Pickens v. Harrison, Tex.Civ.App., 246 S.W.2d 316, modified and affirmed Tex. Sup., 252 S.W.2d 575, a similar case, the jury was asked if the defendant "failed in disposing of salt water produced by his oil wells * * * to protect fresh water sands from pollution." The jury answered "Yes" and in the next issue found that this was negligence. Defendants objected to the principal issue on the ground that it was in the nature of a general charge. The Court

of Civil Appeals held that the trial court "submitted such special issues conformably to the rule declared by the Supreme Court in Wichita Falls & O. Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79", and the Supreme Court in referring to Pepper said "The method of submission of a negligence case there suggested was the one followed in the case at bar." 252 S.W.2d loc. cit. 580.

■ We find no material difference between the form of submission approved in Pickens from the form of issue employed in this case. In each instance the jury was asked to make a finding regarding a specific act and it was then asked if such act was negligent. Negligently permitting salt water to escape from a pit is just as specific as negligently failing to protect fresh water sands from pollution in disposing of salt water produced by a well. These points are overruled.

Issue no. 5, quoted below, was objected to on the ground that it was too general and because no specific acts of negligence were submitted by the charge to the jury and because it was on the weight of the evidence, and Issue No. 6, also quoted below, was objected to on the ground that it was a charge on the weight of the evidence in that it assumed that damage to the water well, as found in preceding issues, was the same as damage to the land.

Issue No. 5 read:

"From a preponderance of the evidence do you find that the plaintiff has suffered damages by reason of salt water from the pit of Haynes B. Ownby Drilling Company's well, Herring No. 1, entering and polluting his fresh water well, if you have found that plaintiff's said fresh water well was so polluted?"

Issue No. 6 read:

"From a preponderance of the evidence do you find that the pollution of plaintiff's well, if you have found that said well was so polluted, is a permanent injury to his land?"

■ Our holding that a specific act of negligence was submitted to the jury disposes of the objections to Issue No. 5, except that it was a charge on the weight of the evidence. The point sought to be made as to this is that the charge assumed that all pollution of appellee's well came from the salt water pit at the Herring No. 1 well when the record discloses that it could have come from other sources. We disagree. The words "so polluted" in the issue qualifies and limits the scope of pollution to that caused by salt water escaping from the pit at the Herring well.

■ Appellee does not brief the objections to Issue No. 6 except by reference to arguments under other points. In addition to what we have already stated we will say in this regard that, in our opinion, damage to a water well is damage to the land upon which it is located.

While appellee was testifying regarding the land, damages to which are sought here, he was asked what was the cost of a house built on the land in 1950. Appellant objected on the ground that such evidence was not material and that it had nothing to do with the proper measure of damages. This objection was overruled and the question was answered.

■ The improvements having been of recent construction it is our opinion that this evidence was admissible on the issue of the reasonable market value of the land. St. Louis, B. & M. Ry. Co. v. Green, Tex. Civ.App.Galveston, 183 S.W. 829; Texas Interurban Ry. Co. v. Halford, Tex.Civ. App.Eastland, 299 S.W. 277; City of Corpus Christi v. McMurrey, Tex.Civ.App. San Antonio, 145 S.W.2d 664, writ dism. cor. judgm. It is noteworthy here that this suit is not for the taking of property but only for its damage, the measure of which is the difference in market value before and after the injury. The house, whatever its cost, was the same after the water well was polluted as it was before, its enjoyment only being impaired.

The next point is that the court erred in permitting Pete Plemons, Production

Superintendent for defendant Mabee Drilling Company, to testify that as far as he knew the Railroad Commission required an oil well driller to put salt water produced in drilling back in the ground. The objection to this evidence was that the Rules of the Commission were the best evidence and that the witness was not qualified to answer.

■ We do not consider this testimony as reflecting any effort to prove the contents of a rule of the Railroad Commission but rather to test the knowledge and qualifications of the witness preliminary to proving the practices of defendant Mabee which were material to the issue of negligence of such company.

The final point relates to jury misconduct.

■ During the course of the trial one of the jurors conversed with Jack Barnes, a water engineer and witness for appellee. The conversation was in the courthouse hall and in the presence of several persons, including other witnesses, jurors, court reporter, deputy sheriff and one of the attorneys for appellant. Mr. Barnes did not know he was talking to a juror. The subject of the conversation was relative to water problems in Randall County where the juror owned land. This was the conversation:

"He ask about the possibility of his obtaining an irrigation well in the vicinity of Happy. His farm was ten miles east, I believe. I told him that was outside the main water belt there, and that there might be a chance he would have a small tributary—he would have a small quantity of water. He was also located fairly close to the Paladero Canyon. The chances are the water would have been drained into the Canyon, and not having an opportunity to build up to where it would be large enough quantities to find an irrigation well."

There was no discussion of pollution of water courses or wells and no discussion of any matter involved in the case on trial.

It is our opinion that jury misconduct of such nature as to require a reversal is not shown. Rule 327, Texas Rules of Civil Procedure; Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989; Jones v. Smith, Tex.Civ.App.Austin, 231 S.W.2d 1003, writ ref., n.r.e.

The judgment of the trial court is affirmed.

Affirmed.