Addie Bouldin ALBRIGHT et al., Appellants,

v.

Ray BOULDIN, Appellee.

No. 3986.

Court of Civil Appeals of Texas.

Eastland.

Sept. 17, 1965.

Rehearing Denied Oct. 15, 1965.

Ruth A. Lindley and J. G. Lindley, Dallas, for appellants.

Holloway & Slagle, R. R. Holloway, Brownwood, for appellee.

WALTER, Justice.

This is a suit to declare heirship. J. E. Bouldin died intestate in Brown County in 1960. His sisters and brothers and the sons and daughters of a deceased brother and sister filed suit in the County Court to determine heirship. Ray Bouldin was named as the defendant. Judgment was rendered against Ray Bouldin and he appealed to the District Court. Based on a verdict, judgment was rendered declaring Ray Bouldin the adopted son and sole heir of J. E. Bouldin, deceased.

The plaintiffs have appealed contending the court erred in overruling their motions for an instructed verdict and for judgment non obstante veredicto; in admitting some testimony and excluding other testimony and in overruling their objections to the charge.

Ray Bouldin pleaded that he was the adopted son of J. E. Bouldin, deceased; that on or about August 15, 1930, when he was about twelve years of age, J. E. Bouldin and his wife, Callie, agreed with Hal Buckner, a person standing in loco parentis, that Bouldin and his wife would adopt him; that pursuant to said agreement and promise Bouldin and his wife on or about August 15, 1930, took Ray into their home and reared him and cared for him as their own child until his maturity; that Mr. and Mrs. Bouldin treated Ray as their own son and always recognized him as their own son and cared for him as they would have cared for their natural child; that Ray conducted himself as a child of Mr. and Mrs. Bouldin, rendering to them the affections and obedience of a child and by reason of all the foregoing facts he became the adopted son

of Mr. and Mrs. Bouldin under the doctrine of adoption by estoppel.

■ The rule is well settled that the judgment of the trial court will not be set aside if there is any evidence of probative force to support it and that a Court of Civil Appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the court's findings. Liedeker v. Grossman, 146 Tex. 308, 206 S.W.2d 232.

Ray Bouldin testified substantially as follows: My natural parents were William H. and Mollie Ricketts. My mother died when I was four years old. My father was an invalid and paralyzed. He died in April, 1931. On or about 1929 my father took me to Dallas where he talked to Hal Buckner about making some kind of provision for me. Following this meeting with Mr. Buckner I came to Brownwood and was met by Mr. and Mrs. Bouldin. Sometimes I referred to Mr. and Mrs. Bouldin as Uncle Jim and Aunt Callie and sometimes I referred to them as Mama Callie and Papa Jim. I referred to them as Uncle Jim and Aunt Callie in the "earlier years."

Ray introduced in evidence the flyleaf of a Bible which revealed that it was a spiritual gift to Ray Bouldin from his mother and father, giving their residence as 1500 Coggin Avenue, Brownwood, Texas, where the record shows Mr. and Mrs. Bouldin had lived for many years. He also introduced a gift card which accompanied a chest of silver given to him and his wife by Mr. and Mrs. Bouldin on the occasion of Ray's wedding which was signed "Mother and Dad." He also introduced a census record from the Woodland Heights School concerning Ray Bouldin and signed by Mrs. J. E. Bouldin in March, 1934. It recited that Jim Bouldin was the father of Ray Bouldin and that Callie Bouldin was the mother of Ray. Another family census record in 1935 signed by Mrs. J. E. Bouldin revealed the same information.

Melvin Storm testified substantially as follows: I was working for the Davis-Morris Funeral Home in Brownwood at the time of Mrs. Bouldin's death. We make a record of the funeral and keep it in the file at the funeral home. This file reveals that the information was furnished by J. E. Bouldin and Mrs. H. L. Evans. This record listed Ray Bouldin of Fort Worth, Texas, as a son of the deceased Mrs. Bouldin.

Travis Gilmore testified substantially as follows: I have been a partner with Mr. J. E. Bouldin for about 20 years. Mr. Bouldin told me that he had gone to Buckner's Orphans Home to see about getting a child. He later told me he had talked to Hal Buckner and that through Hal Buckner, Ray was placed with him and Mrs. Bouldin. From the beginning the boy was always known as Ray Bouldin. Mr. and Mrs. Bouldin treated Ray as their child. He lived in their home and they sent him through high school and Howard Payne College and reared and supported him and treated him as any parent would treat their own child. He observed that Ray rendered to Mr. and Mrs. Bouldin the affection and obedience of a child and this relationship continued until Ray was grown and went into the service.

Mrs. Henry L. Evans testified substantially as follows: My husband was a brother to Mrs. Callie Bouldin. We visited in the Bouldin home and they visited in our home. Mr. and Mrs. Bouldin had no children of their own. They loved children and talked about adopting a child. Mr. Bouldin made a trip to Buckner's Orphans Home. Sometime thereafter Mrs. Bouldin telephoned me and said "Well, we have gotten a boy." A few days thereafter Mrs. Bouldin brought Ray over to our house. That was sometime in 1930 and Ray was about 12 years of age. From then on the boy assumed the name of Ray Bouldin and was known as such in school, in church and in college. Mr. and Mrs. Bouldin introduced him as their son and this continued until the time he enlisted in the service. They appeared to be fond of the boy and the boy's attitude toward Mr. and Mrs. Bouldin appeared to be that of

any child toward his natural parents. He was obedient and treated them as his own father and mother. When Mrs. Bouldin died Mr. Bouldin came to our home and we were discussing the survivors and we asked Mr. Bouldin about Ray and he said that Ray was his son. Mr. Evans asked him if he had adopted the boy and Mr. Bouldin said "Yes." Ray was listed in the paper as a son.

Henry L. Evans testified substantially as follows: Mr. Bouldin came to our house following the death of his wife and we helped him prepare a statement for the paper and the funeral home and I said, "Jim, what about Ray? Is he where—was he ever adopted?" He said, "Yes". I said, "Well, I just wanted to know whether to call him a son or what, whether you considered him a son or not." He said, "Yes". So I just put, inserted in there, "Ray Bouldin, a son."

The record also contains an exhibit introduced by Ray of a newspaper clipping from the Brownwood Bulletin. This news item gave an account of Staff Sergeant Ray Bouldin's visit with his parents Mr. and Mrs. J. E. Bouldin. Mrs. J. E. Bouldin gave the clipping to Mrs. Ray Bouldin and told her that she had inserted it in the paper. Other witnesses testified to the family relationship existing between the parties. The parties stipulated that Mr. Hal Buckner was deceased.

■■ It was incumbent upon Ray Bouldin to plead and prove that J. E. Bouldin agreed with Ray or with his parents or with Hal Buckner (a person in loco parentis) that he would adopt Ray. Such agreement could be established either by direct or circumstantial evidence or both. Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972. We consider the acts, conduct and admissions of Mr. and Mrs. Bouldin as strong circumstantial evidence of the existence of an agreement on their part to adopt Ray. Also, the other relevant facts and circumstances in evidence constitute some evidence of probative force to support the jury's verdict and the judgment of the court that Ray

Bouldin was the adopted son of J. E. Bouldin under the doctrine of equitable estoppel. Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72; Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77.

■ Appellants' 3rd point is as follows: "The court erred in admitting testimony regarding statements made by J. E. Bouldin to witnesses on or about February 25, 1960, the time of death of Callie Bouldin." Appellants cite us to pages 8 and 9 of the Statement of Facts for their objection. They say further "Other witnesses also testified as to statements made by J. E. Bouldin at the time of his wife's death." No reference to the Statement of Facts is given to the testimony of the other witnesses who so testified. Appellants do not contend that they objected to such other witnesses' testimony. Mrs. Henry L. Evans, Sr. was asked if Mr. Bouldin came to her home in February 1960 after the death of his wife. Appellants lodged the following objection to such question:

"MR. LINDLEY: We hardly see a conversation thirty years after his— how it is going to effect the issue here of adoption by—since it is some thirty years after the young man came to live with Mr. and Mrs. Bouldin."

The objection was overruled and Mrs. Evans testified as follows:

"Well, we were discussing the survivors so we could have a little notice in the paper, and we asked Mr. Bouldin about Ray, how he is 'your son', and he said 'Yes'. And then Mr. Evans said, 'You have adopted him,' and he said, 'Yes'. So we listed that in the paper as his son."

Mrs. Evans' testimony was admissible. Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72.

■ The appellants offered in evidence the affidavit of J. E. Bouldin dated March 23, 1960, which purported to be a proof of heirship of Callie Bouldin, deceased.

This instrument was filed for record with the County Clerk of Brown County on the 25th day of March, 1960. The affidavit contained the following:

"Of the marriage of affiant and the said Callie E. Bouldin, there were no children born and neither the said Callie E. Bouldin or affiant herein ever adopted any children."

The effect of this instrument was that J. E. Bouldin inherited Callie Bouldin's interest in the community property of the affiant and the deceased and was therefore a self-serving declaration. This case was tried on November 4th and 5th, 1964.

"As a general rule, self-serving declarations are inadmissible in civil cases on behalf of the party making them or others claiming under him. This rule is not affected by the fact that the declarations are in writing or that the party who made them is dead." 24 Tex.Jur.2d 160.

We find no merit in appellants' contention that the court erred in failing to admit such affidavit in evidence.

Appellants' 5th and last point is as follows:

"The court erred in overruling appellants' objections in connection with the submission of special issue number 4 which read 'Do you find from a preponderance of the evidence that Ray Bouldin rendered to J. E. Bouldin and Callie Bouldin the affections and duties of a child, from about August, 1930 until the maturity of Ray Bouldin, as if he had been their own child?' This issue was improperly submitted in that it did not require the finding of an essential element that defendant, Ray Ricketts Bouldin rendered the affections and duties of a child to J. E. Bouldin because of a reliance that he had been led to believe by J. E. Bouldin that J. E. Bouldin had adopted him."

 The jury found that J. E. Bouldin agreed with Hal Buckner that he and his wife would adopt Ray; that Hal Buckner was authorized by and was acting for Ray's father in making such agreement; that Mr. and Mrs. Bouldin reared and cared for Ray from about August, 1930, until his maturity as if he had been their own child; and that Ray rendered to Mr. and Mrs. Bouldin the affections and duties of a child from about August, 1930, until his maturity as if he had been their own child. The authorities cited by appellants do not support their contention that the court erred in overruling their objection to said special issue.

We have examined all of appellants' points and find no merit in them. They are overruled.

The judgment is affirmed.