**John MITCHELL, Appellant and Appellee,**

v.

**Clayton D. BURLESON, Appellee and Appellant.**

**No. 7225.**

Court of Civil Appeals of Texas, Beaumont.

March 25, 1971.

W. R. Malone, Huntsville, Alvis S. Ellisor, Cleveland, for appellant.

James E. Faulkner, Coldspring, Ross Hightower, Livingston, for appellee.

KEITH, Justice.

Both parties have appealed from the judgment entered below, and we have consolidated the appeals and will refer to the parties as they appeared in the trial court. Mitchell, as plaintiff, brought suit in trespass to try title to eighty acres of land situated in San Jacinto County, relying upon his adoption by estoppel and also claimed under the ten-year statute of limitation.

Burleson, as defendant, pleaded not guilty and claimed title to the land under deeds from the common source of title as well as under the three, five, and ten-year statutes.

As we will discuss more in detail hereinafter, the jury verdict was favorable to the contentions of the plaintiff and adverse to the defendant, Burleson. The trial court, however, upon motion for judgment non obstante veredicto, set aside two of the findings of the jury favorable to plaintiff and entered judgment whereby each recovered title to an undivided half interest in the whole tract. It is from this judgment that the appeal is brought.

The parties stipulated that the common source of title was a deed dated April 19, 1920, from Tod Robinson to Dock Chambers. Dock Chambers and Lucy Ann Chambers were married in 1877, and Dock died in 1926, while Lucy Ann died in 1927. The jury found that Jim Chambers was a stepson of Dock Chambers (plaintiff having offered evidence to prove that he was the natural son of Lucy Ann), and Jim died in 1947, survived by a son, Dennis, and a daughter, Jimmie Lee Denson, the wife of Green Denson. Burleson claimed under the deeds from Dennis and Denson, as well as under the several statutory limitation periods.

Upon the trial, the jury found in answer to the first five special issues[1] that Mitchell was the adopted son of Dock and Lucy Ann Chambers under the doctrine of equitable estoppel. In answer to Special Issue No. 6, the jury found that Mitchell had held exclusive, peaceable and adverse possession of the land in issue for ten consecutive years or longer after March 16, 1927, the date of death of Lucy Ann, and June 27, 1959, the date of Burleson's deed. And, in answer to No. 7, the jury found that Jim Chambers was a stepson of Dock Chambers.

The jury returned negative answers, i. e., did not find in favor of Burleson upon these issues: (8) the three-year statute of limitaitons between June 27, 1959 and July 5, 1967 (the date suit was filed by Mitchell); (9) the five-year statute covering the same period; (10) or under the ten-year statute for any period of ten consecutive years preceding July 5, 1967.

Upon motion and notice, the court set aside the findings to No. 6, Mitchell's ten-year limitation finding, and No. 7 that Jim Chambers was the stepson of Dock Chambers. The court overruled Burleson's motion for judgment non obstante veredicto challenging the findings on the equitable adoption of Mitchell by Dock and Lucy Ann, and likewise overruled his similar complaint that the adverse findings upon three limitation issues were without support in the evidence. Mitchell filed a motion for judgment upon the verdict and an alternative motion for judgment for three-fourths of the land in the event the court set aside his finding under the ten-year statute. Mitchell's motions were overruled and the judgment awarded each party an undivided one-half interest in the land involved in this suit. Each seeks a reversal and a rendition of the judgment in his favor. Burleson also has a point asking, alternatively, for a remand.

Mitchell has two points: (1) the error of the court in setting aside the finding of the jury that Jim Chambers was a stepson of Dock Chambers, and (2) the error of the court in setting aside the favorable finding under the ten-year statute of limitation. He has an alternative complaint that, in any event, the trial court erred in awarding him only one-half of the lands in controversy, since he was entitled, so he says, to an undivided three-fourths thereof under the findings given effect to by the court in its judgment. Burleson, as an appellant, has three points: (1) the error of the court in refusing to set aside the unfavorable answers of the jury to the several limitation issues involving his claim of

---

1. These issues followed those summarized in Albright v. Bouldin, 394 S.W.2d 681, 685 (Tex.Civ.App.—Eastland, 1965, no writ), and Malone v. Dixon, 410 S.W.2d 278, 279 (Tex.Civ.App.—Eastland, 1967, error ref. n. r. e.). We have no point challenging the form or the sufficiency of the issues to support the judgment based upon the application of the doctrine of adoption by equitable estoppel.

title; (2) the error of the court in refusing to set aside the first five issues upon which Mitchell prevailed upon the theory of equitable adoption; and (3) jury misconduct. All of the points, except Burleson's third, involve the action of the court upon the motions for judgment non obstante veredicto.

Mitchell's claim that he was adopted by Dock and Lucy Ann Chambers permeates our entire record and forms, at least to some extent, the basis of his recovery of even part of the property in question. We turn, therefore, to a consideration of Burleson's point two, complaining of the refusal of the trial court to set aside the jury's findings in answer to five special issues submitting equitable adoption. Before doing so, however, we pause to mention the fact that the point which we consider, along with the statement and argument found in Burleson's brief fails to comply with the briefing rules set out in Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960). The derelictions in this regard, while serious, are not such as necessarily preclude our consideration of the point, and we turn to the merits of the case.

Chief Justice Cureton, considering the question of equitable adoption in the case of Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72, 79 (1934), quoted from the annotation found in 27 A.L.R. 1365, as follows:

"The cases considering the matter are in substantial harmony in sustaining an estoppel in pais to preclude adoptive parents and their privies from asserting the invalidity of adoption proceedings, or, at least, the status of the adopted child, when, by performance upon the part of the child, the adoptive parents have received all the benefits and privileges accruing from such performance, and they by their representations induced such performance under the belief of the existence of the status of adopted child."

The rule so announced was followed in Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 908 (1940).

While parol agreements to adopt are not within the statute of frauds [Jones v. Guy, supra, 143 S.W.2d at p. 910], it has been said that, "In no case has this Court upheld the adoptive status of a child in the absence of proof of an agreement or contract to adopt." Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972, 974 (1951). But, it is not necessary that there be direct evidence as to the agreement, since it, like any other ultimate fact, can be proved by the acts, conduct and admissions of the parties and other relevant facts and circumstances. Cavanaugh v. Davis, supra, 235 S.W.2d at p. 975.

In *Cavanaugh,* we are told that proof of the essential facts "should be clear, unequivocal and convincing" since death has ordinarily sealed the lips of the alleged adopter (235 S.W.2d at p. 978). But, our review of the several cases upon the subject leads us to the conclusion that when tested under the rules governing our appraisal of the quantum of evidence to support a jury finding, there is no greater burden placed upon the alleged adopted child than is found in the ordinary case. Cf. Garcia v. Saenz, 242 S.W.2d 230, 232 (Tex.Civ.App.—San Antonio, 1951, no writ); Guidry v. Denkins, 460 S.W.2d 943, 948 (Tex.Civ.App.—Houston, 1st, 1970).

In our review of the evidence, we will consider only that evidence and the reasonable inferences to be drawn therefrom, that are favorable to the answers of the jury, and we must disregard all evidence which would lead to a contrary result. Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359, 363 (1957); C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 193 (Tex.Sup., 1966); W. H. Hodges & Co. v. Donley County State Bank, 407 S.W.2d 221, 223 (Tex.Sup., 1966); Texas & Pacific Railway Company v. McCleery, 418 S.W.2d 494, 496 (Tex.

Sup., 1967); Alamo Ambulance Service, Inc. v. Moulton, 402 S.W.2d 200, 202 (Tex. Civ.App.—San Antonio, 1966), affirmed, 414 S.W.2d 444 (Tex.Sup., 1967).

■ We first dispose of Burleson's suggestion that the doctrine is not available to Mitchell because it was not specially pleaded. There is language in *Cavanaugh,* supra, 235 S.W.2d at p. 974, that "it was incumbent upon respondent to plead and prove" the necessary elements before a recovery under the doctrine would be permitted. That case was not one brought in trespass to try title, but was an action to declare heirship. The same holding is to be found in Albright v. Bouldin, supra, 394 S.W.2d at p. 684, but it, too, was an action to declare heirship.

It has long been the rule of law in this state that in a trespass to try title action, a plaintiff claiming as an heir is not required to specially plead his heirship. Bridges v. Cundiff, 45 Tex. 440, 443 (1876). As was said in Edwards v. Barwise, 69 Tex. 84, 6 S.W. 677, 678 (1887):

"When a plaintiff in an action of this character pleads specially his title, and any link in the chain is dependent upon a fact resting in parol, *such as heirship, etc.,* that fact should be alleged, otherwise he will not be permitted to prove it. But should the petition be in the statutory form, as in the present case, he will be permitted to adduce any competent parol evidence in order to establish his title, although the fact proposed to be established by such evidence be not specially pleaded." (Emphasis supplied.)

See also, Joyner v. Christian, 131 Tex. 274, 113 S.W.2d 1229, 1231 (1938). As said in Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471, 474 (1945), a plaintiff "can recover an equitable title under the ordinary formal averments contained in a statutory action of trespass to try title without the necessity of specially pleading her equitable title."

In Franklin v. Smith, 265 S.W. 715, 718 (Tex.Civ.App.—Galveston, 1924, error ref.), it was said that, "The customary allegations in case of trespass to try title are sufficient to authorize proof of any fact tending to establish the title of the plaintiff." See also, Busbice v. Hunt, 430 S.W.2d 291, 293 (Tex.Civ.App—Tyler, 1968, error ref. n. r. e.). Mitchell's statutory pleading in trespass to try title authorized the reception of the testimony as to his claim of heirship as an adopted son of Dock and Lucy Ann Chambers.

■ Mrs. Eliza Rodgers testified that Lucy Ann Chambers obtained custody of John Mitchell when he was a small baby, called him "my baby," and stated, "I'm going to carry him home and we're going to raise him." She testified that Lucy Ann and her husband, Dock Chambers, actually did rear Mitchell, who continued to live with them until after he was grown and married, helping them on the farm. Mitchell, according to this witness, remained with and continued to care for Lucy Ann and Dock until they died; that he called the Chamberses "Mamma" and "Pa" and that they called him "Baby." She testified that Dock and Lucy Ann treated John Mitchell as their child, sending him to school and taking him to church with them.

Mrs. Martha Wilson gave testimony that Mitchell called the Chamberses "Mamma" and "Papa," took care of them until their deaths, etc. Ambus Richardson, an 87-year-old native of the area, testified that Dock called Mitchell "son," having gotten him "right soon after he was born." He corroborated the fact that it was John Mitchell who stayed with the Chamberses until they finally died, taking care of their material wants through his efforts.

John Mitchell was 72 years of age at the time of the trial. The witness, Henry White, testified that he was about the same age as Mitchell and remembered that when he was about 10 or 12 years old, he

heard Lucy Ann, in the presence of Dock Chambers, say that she had adopted John Mitchell, this being his testimony:

"Q. Did you or not ever hear Dock and Lucy Ann use the word 'adopted'?

"A. Yes, sir; I heard her say it, that he was an adopted child.

"Q. And do you know to whom she was referring, who she was talking about adopting?

"A. She was talking about John, is all I know, that she had done dopted John, you know, as her boy. She raised him.

"Q. Did you hear her say this once or more than once?

"A. Oh, lots of times I heard her say that, you know. She raised that boy."

Johnny Washington, 86 years of age, testified that Mitchell called Dock and Lucy Ann "Daddy" and "Mother," and that they called him "Baby." Annie Rose Stone testified that she had heard Lucy Ann say several times that she had gotten John Mitchell from his mother "in handwriting."

We are reviewing a "no evidence" point, and not one complaining that the jury finding was against the great weight and preponderance of the evidence. From our review of the evidence, we are convinced that there was more than a scintilla of evidence of probative force ·to support the finding of the jury. Gulf, Colorado & Santa Fe Railway Company v. Deen, 158 Tex. 466, 312 S.W.2d 933, 937 (1958). Burleson's second point is overruled.

■ We turn next to Mitchell's first point challenging the action of the trial court in setting aside the finding that Jim Chambers was the stepson of Dock Chambers. In our consideration of this point, we will bear in mind the rules previously mentioned with reference to our review of the record, as set out in Biggers v. Continental Bus System, supra, 303 S.W.2d at

p. 363. Mitchell, having assumed the burden of proof upon the issue, and having obtained a favorable finding by the jury upon the issue, is entitled to the benefit thereof if it finds some support in the evidence. Deen Case, supra (312 S.W.2d at p. 937).

Mitchell offered as his witness Annie Rose Stone, who testified upon cross examination that she had known Jim Chambers since 1922 and had heard him say that "he wasn't a Chambers, that he just used the name" because "his mother married a Chambers." This was but repetitive of testimony given upon direct examination when she was given testimony concerning the family history of Dock and Lucy Ann Chambers. Asked about the age of Jim Chambers at the time Dock and Lucy Ann were married, the witness said, "I don't know, but I know they [Dock and Lucy Ann] said he was a good sized kid, a couple of years old or something. She said she had him when she married." Mrs. Stone testified that Jim Chambers also said that he was a "Morris and wore Chambers."

Mrs. Martha Wilson was 84 years of age and had known Dock and Lucy Ann Chambers for many years, since John Mitchell was "a little old tot." She testified that Dock Chambers told her that Jim Chambers was Lucy Ann's child and had never heard him say that Jim was his own child. She said that Lucy Ann told her that "she brought this child [Jim Chambers] from Alabama with her." Our record contains the marriage certificate of Dock and Lucy Ann showing them to have been married in San Jacinto County on July 20, 1877. Ambus Richardson testified that he was born in 1882 and that Jim Chambers was six or seven years older than him—indicating that Chambers was born at least as early as 1876, before the marriage of Dock and Lucy Ann in 1877.

For whatever probative effect it might have had, Mitchell offered Lee Jones, who had known the parties all of his life, he being 72 years old at the time of the trial. Jones said that Jim Chambers was "a yel-

low fellow. * * * Real yellow too" in contrast to the appearance of Dock and Lucy Ann, who were both "real dark, real black." Annie Rose Stone gave similar testimony.[2]

Although Burleson has filed two briefs, one as an appellant and one as an appellee, he does not meet the issue which we have under discussion in any manner.[3] Many of the statements of fact which we have set out in our prior discussion have been taken from the brief of Mitchell as an appellant, wherein he was attacking the action of the court in setting aside the finding that Jim Chambers was the stepson of Dock Chambers. Yet, Burleson, as an appellee, has not challenged these statements directly in his brief. Under these circumstances, and particularly since we have a large and confused record, we invoke the provisions of Rule 419, and accept such statements so made by Mitchell as correct. Crawford v. Modos, 465 S.W. 2d 220 (Tex.Civ.App.—Beaumont, 1971).

Again, we point out that we are reviewing a "no evidence" point, not one challenging the sufficiency of the evidence. Deen Case, supra (312 S.W.2d at p. 937). From our review of the record, we are of the opinion that there was some evidence of probative value supporting the finding of the jury to Special Issue No. 7. So finding, it was error for the trial court to set aside such finding and we sustain Mitchell's first point in his brief as an appellant.

■ We now reach Mitchell's second point, the claimed error of the trial court in setting aside the jury finding that he had acquired the entire tract in issue under the ten-year statute of limitation. In our discussion of this point, the reader will remember that we have found: (1) Mitchell was legally adopted by Dock and Lucy Ann and (2) that Jim Chambers was the stepson of Dock, along with the implied finding that he was the natural son of Lucy Ann. Dock and Lucy Ann having died intestate, Mitchell and Jim Chambers were tenants in common to the tract of land in suit.

Our prior holdings would entitle Mitchell to recover three-fourths of the land with Burleson (holding under Jim Chambers' heirs) recovering one-fourth. By this point, however, Mitchell seeks to recover the entire tract of land as against the grantee of his tenant in common.

As early as 1848, our Supreme Court used italicized print in stating this rule

---

2. We have grave doubt as to the probative value of this evidence, even though it was admitted without objection. Judge McCord, in White v. Holderby, 192 F.2d 722, 726 (5th Cir., 1951), spoke of the subject, remarking that, "If there are any experts in this section of the Country [Georgia] especially qualified to testify as to racial characteristics, they are extremely rare, * * *." Nevertheless, he held that reversible error was not shown in admitting the opinions of laymen as evidence of race. Cf. Jaffe v. Deckard, 261 S.W. 390, 395 (Tex.Civ.App.—Amarillo, 1924, error ref.), wherein it is said that, "Where the issue is as to race or color the child may be exhibited to the jury."
At best, this evidence was but a circumstance for consideration by the jury; and, as we have demonstrated, there was other evidence supporting the answer of the jury to the issue under discussion.

We do not rest our decision upon the difference in color between Jim Chambers on the one hand and Dock and Lucy Ann Chambers on the other.

3. Burleson's brief, as an appellee, while containing two counter-points traversing those of Mitchell as an appellant, does not touch in any manner Mitchell's charge that it was error for the trial court to set aside the finding that Jim Chambers was a stepson of Dock Chambers. Most of Burleson's brief as an appellee is devoted to contentions which he could more appropriately urge as an appellant, i. e., the lack of evidence to support the finding that Mitchell should recover under the ten-year statute of limitations and the claimed abundance of evidence to support Burleson's limitation title. Neither of these questions is within the ambit of the present discussion.

of law in Portis v. Hill, 3 Tex. 273, 279 (1848):

"There is no case in which a private individual will not be barred by an adverse possession, continued for the period prescribed as constituting a bar under the statute of limitations."

While giving recognition to the rule so stated above, our courts have consistently placed a heavy, if not almost insurmountable, burden upon one claiming title by limitation against his co-tenant. As a tenant in common with Jim Chambers, plaintiff is faced with the rule of law set out in Todd v. Bruner, 365 S.W.2d 155, 156 (Tex.Sup., 1963):

"This case presents a cotenancy situation involving the ten year statute of limitation, Article 5510, Vernon's Ann. Tex.Stats. It is the settled law in this state that, 'The possession of a cotenant or tenant in common will be presumed to be in right of the common title. He will not be permitted to claim the protection of the statute of limitations unless it clearly appears that he has repudiated the title of his cotenant and is holding adversely to it.' Phillipson v. Flynn, 83 Tex. 580, 19 S.W. 136; Poenisch v. Quarnstrom, Tex.Sup.Ct., 361 S.W.2d 367."

In his attack upon the action of the trial court in setting aside the finding under the ten-year statute of limitation, Mitchell sets out the portions of the record upon which he relies. Our factual resume which follows is basically a summary of this presentation. Following the death of Lucy Ann Chambers in 1927, Mitchell and his wife were alone upon the place for two or three years until, as he attempted to testify before an objection was sustained, "He [Dennis] said he'd like to move up there." However, this testimony, originally ruled to be inadmissible upon direct examination, was placed firmly in the record upon cross-examination, when defendant's counsel asked the following question:

"Q. And you say that Dennis came and asked you if he could move into the house [formerly occupied by Dock and Lucy Ann Chambers]?

"A. Yes, sir."

Mitchell said that, although Dennis asked his permission to move into the house, he did not seek permission to farm the land in suit, but "I knew that's what he intended to do. That's what he he [sic] wanted to move up there for." While he, Mitchell, was farming the land, Dennis was also engaged in farming a part of the same land. During this period of time, Dennis sold at least part of the timber on the land and kept all of the money, but he (Mitchell) never sold any timber from the land. Mitchell never tried to stop anyone from cutting the timber, nor did he ever try to collect the timber money from anyone. He admitted that, "I wasn't claiming the timber," but "just the place where you [he was] were farming out there."

Finally, Mitchell was asked these direct questions and gave these answers:

"Q. Did you ever tell Dennis Chambers that you were claiming to own all that property?

"A. I can't remember of it now.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. You never told Jim Chambers [Dennis' father] that you were claiming to own it either, did you?

"A. No, sir.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. All right; you never claimed to have told any of Jim's family that you claimed to own it, did you, say Jimmie Lee [Dennis' sister]?

"A. She never asked me."

The true nature of Mitchell's claim is shown by this short excerpt from his cross-examination:

"Q. All of you [Dennis and Mitchell] lived up there together and farmed

the same piece of property; isn't that the facts about it?

"A. Yes, sir.

"Q. One of you all had as much right to the property; isn't that right?

"A. Yes, sir; up until they [Dock and Lucy Ann] died, and after they died, it was mine, Nobody owned it but me and my wife.

"Q. What made it yours?

"A. I taken care of them old people with nobody on the place but me and my wife. We taken care of them until they died.

"Q. All right; is that why you say the place belongs to you?

"A. Yes, sir; that's right."

We note, also, that Jim Chambers conveyed a one-fourth interest in the minerals underlying the land by deed executed in 1940, no part of the proceeds thereof being paid over to Mitchell. Mitchell does not, in his resume of the evidence, point to any testimony of an unequivocal nature which would support his claim to ownership of the property at any time while either Jim Chambers or his children, Dennis and Jimmie Lee, were alive. The first overt action shown in our record is the filing of the suit, long after all of the participants, save himself, were dead. His own testimony, notwithstanding the fact that the Dead Man's Statute (Article 3716, Vernon's Ann.Civ.St.) was not interposed, is legally insufficient to support title under the ten-year statute of limitation.

Mitchell "guarded his claim carefully" and it "was also kept secret from the taxing authorities" during the period under consideration. See the comments of Justice Walker in McDonnold v. Weinacht, 465 S.W.2d 136, (Tex.1971), discussing a claim under the ten-year statute.

Mitchell's possession along with his tenants in common, under the circumstances shown in our record, was insufficient to ripen into a title by limitation. Such possession was not exclusive, but was shared with the other co-tenants, and joint use of the lands by the several owners will not support a judgment based upon the ten-year statute. Southwestern Lumber Co. v. Allison, 276 S.W. 418 (Tex.Com. App., 1925, holdings approved); Rick v. Grubbs, 147 Tex. 267, 214 S.W.2d 925, 927 (1948); Hardin v. Wanslee, 197 S.W. 1031, 1033 (Tex.Civ.App.—Austin, 1917, error ref.); Walton v. Hardy, 401 S.W.2d 614, 616 (Tex.Civ.App.—Waco, 1966, error ref. n. r. e.). See also the comprehensive annotation in 82 A.L.R.2d 5, 44.

Further, even if he had brought home notice to the other tenants in common of his hostile claim to all of the lands—which is not supported in our record—Mitchell's inactivity and failure to object when his co-tenant sold the timber from the land was sufficient to stop the running of limitation in his favor. Black v. Goolsbee, 226 S.W. 463 (Tex.Civ.App.—Beaumont, 1920, error dism.), cited with approval by the Supreme Court in Rick v. Grubbs, supra, 214 S.W.2d at p. 927. See also Solis v. La Brisa Land and Cattle Company, 361 S.W.2d 631, 632 (Tex.Civ. App.—San Antonio, 1962, no writ).

As a matter of law, Mitchell failed to establish title to the land under the provisions of Article 5510, V.A.C.S., and the action of the trial court in disregarding jury finding to Special Issue No. 6 was proper. Mitchell's second point, as an appellant, is overruled.

Burleson's claim under the three-year statute of limitations (Article 5507, V.A.C.S.) is without merit. There was neither pleading nor proof of a regular chain of transfers from and under the sovereignty of the soil to himself, without which he may not claim the benefit of the statute. Haring v. Shelton, 103 Tex. 10, 122 S.W. 13, 14 (1909); J. R. Watkins Co. v. Gibbs, 66 S.W.2d 355, 357 (Tex.Civ. App.—Austin, 1933, no writ). See also,

Lange, Land Titles, § 862, p. 370; 2 Tex. Jur.2d, Adverse Possession, § 149, p. 264; West, "The Texas Three Year Statute of Limitation", 19 Tex.Rev. 375, 393 (1941).

■ Burleson's argument that he showed title, as a matter of law, under the five and ten-year statutes of limitation, is likewise without merit. The deed under which he holds, from Dennis and his sister, was not filed for record until June 27, 1959, while this suit was brought on July 5, 1967. Burleson's claim under the ten-year statute (Article 5510, V.A.C.S.) is necessarily based, at least in part, upon the possession of the premises by his grantors, particularly Dennis. The same evidence and the line of authorities which we have mentioned previously as defeating Mitchell's claim under the ten-year statute, now dictate a similar result insofar as it relates to Dennis' grantee. During at least a portion of the period upon which Burleson must rely, Dennis and Mitchell were tenants·in common on the land and neither could perfect limitation title against the other except under the circumstances which we have mentioned. Our review of the evidence, under the accepted principles noted earlier herein, convinces us that there was some evidence supporting the negative answer of the jury to the issue involved (No. 10), and that it would have been error for the trial court to have sustained Burleson's motion to disregard such finding.

But, Burleson asserts that Mitchell acknowledged his title by paying the sum of five dollars to Burleson's tenant, McAdams, for permission to place some cattle inside McAdams' fence. Mitchell, readily admitting the payment to McAdams, explained it by saying that McAdams was the lessee of lands which completely surrounded the tract in question and had the same enclosed by a single fence. McAdams' other leased land, which surrounded the land that Burleson claims under his

deed involved here, provided the only access to the land in controversy; so, under Mitchell's theory, this nominal payment was for permission to cross the lands which McAdams had leased from Gibbs Brothers to reach the land involved in this suit—not in payment for grazing privileges thereon.

The proffered explanation, compatible with the other basic facts in the case with reference to the locations of the McAdams fence, afforded at least some basis for his contention that he had never acknowledged Burleson's ownership of the land in suit, nor had he sought permission from either Burleson or McAdams to use the land for grazing purposes. The testimony presented an issue of fact peculiarly within the province of the jury to resolve, and one which we are not authorized to disturb on appeal. Again, we call attention to the fact that the point which we discuss is a "no evidence" point and not one challenging the sufficiency of the evidence.

■ Burleson contends, in any event, that he was entitled to prevail upon his claim under the five-year statute. Before we discuss the evidence, we note that in Pinchback v. Hockless, 138 Tex. 306, 158 S.W.2d 997, 998 (1942), our Supreme Court said:

"The requisites named in the five-year statute for the giving of notice to the land owner that a claim is being asserted thereto, or for maturing limitation title thereunder, are (1) a recorded deed to the land; (2) the payment of taxes; and (3) adverse possession; and *it is essential to maturing the title that all the requisites named continue through the entire period.* [Citations omitted.] If any one of the requisites is lacking, the claim of limitation title based upon the statute under consideration must fail." (Emphasis supplied.)

In discussing the nature of the possession required under the five-year statute,

it was said in Niday v. Cochran, 42 Tex. Civ.App. 292, 93 S.W. 1027, 1028 (1906):

"There must be adverse possession and cultivation, use, or enjoyment, in addition to payment of taxes and a registered deed. The possession must be fair and open and continuous. The mere fencing of land or erecting other improvements thereon will not constitute such possession, if unaccompanied by actual occupancy or open use."

Cf. Sanders v. Worthington, 382 S.W.2d 910, 920 (Tex.Sup., 1964); McDonnold v. Weinacht, supra (465 S.W.2d at p. 141).

Under his own testimony, Burleson failed to make out a case under the five-year statute. Since receiving the deed from Dennis, Burleson said that "no one has ever lived on the place" and that other than fencing about sixty acres, the only improvement he made to the land was discing and mowing an old field one year and constructing some cattle pens of poles and wire, in about " '61 or two, somewhere along there." He put twelve or fifteen head of cattle on the land sometime during the early sixties ("it was around about in '60, '61 or '62"), they being confined inside the sixty-acre portion which had been fenced.

Burleson's cattle did not remain upon the land throughout the year, for, as he said, "I moved them back to one of my other places for the winter." The unfenced part of the land involved in this suit was available for grazing purposes by the public generally because, and again we use Burleson's words, "It's open range in San Jacinto County." The land surrounding that involved in this suit, owned by Gibbs Brothers, was under some type of lease to one McAdams, who was grazing his cattle thereon. After removing his cattle from the land, Burleson entered into an oral lease ("man to man") with McAdams to use the property involved here in his grazing operations. McAdams then entered upon the premises, cut the fence which Burleson had erected previously, and thereby opened up our tract of land to the larger area which included the Gibbs Brothers' property.

Accepting this testimony at face value, it was insufficient to support an affirmative finding of limitation title under the five-year statute. Such possession was not continuous for the five-year period required, nor was it accompanied by more than "mere fencing" of a portion of the premises. There was no actual occupancy of the lands, nor was there an open and hostile use throughout the required period. *Niday Case,* supra.

Since, under *Pinchback,* supra, all of the requisites mentioned in Article 5509 must co-exist continuously throughout the entire period, it would serve no useful purpose to discuss the claim based upon the payment of taxes. From our review of the entire record in accordance with the rules governing the type of point under discussion, we are of the opinion that it would have been error for the trial court to have instructed the jury peremptorily in Burleson's favor upon the basis of the five-year statute. In Hicks v. Matthews, 153 Tex. 177, 266 S.W.2d 846, 849 (1954), the court said:

"Judgment non obstante veredicto may be rendered by the trial court only in a case where a directed verdict would have been proper."

Consequently, the trial court did not err in overruling Burleson's motion to disregard the unfavorable finding and to enter judgment notwithstanding the verdict.

We quote Burleson's third point, relating to misconduct of the jury, exactly as presented to us:

"The Trial Court Erred in Overruling and in not sustaining Grounds 7, 8 and 9 of the Defendant Burleson's Motion for New Trial (Tr. pp. 54, 55 & 56) because of Jury Misconduct in that it was indisputedly [sic] established in the Testimony of the Defendant Burleson's Motion ofr [sic] New Trial that there was

NOT a unanimous Verdict of the Jury based upon the lawfully admitted testimony, but that at least one Juror, Nick Troha that his Verdict was influenced and based solely upon the unsworn statement and Testimony of Norma Smith who stated while the Jury was retired in the Jury Room deliberating their verdict that the Defendant (Clayton D. Burleson) 'had Plenty, and her opinion was a Crook, AND A THIEF, and trying to TAKE something that didn't belong to him from John Mitchell, a poor old colored fellow that had worked hard all his Life' (St. F. p. 26) and that such Statement INFLUENCED him, the Juror Nick Troha, that he didn't know either Mr. Burleson nor the Jury foreman Norma Smith before the trial, and had no reason to doubt her (the foreman of the Jury) and RELIED upon such Statement WITHOUT which he would NOT have rendered the verdict he did in favor of John Mitchell, St. F. (on Defendant's Motion for New Trial) page 26 and 27; [sic] Moreover the Old colored Juror Willie Harrell, 69 years of age who testified on such hearing that he Could Neither Read of Right [sic] (Except he learned to scribble his name or signature) and thought ALL alone [sic] that he was, and INTENDED TO, render a verdict in favor of Mr. Burleson (St. F. pp. 47, 48, 49 & 50 on Motion for New Trial) and the UNDISPUTED testimony verified by the Defendant Burleson and the Honorable Trial judge himself of an arm in arm, long and intimate conversation between the plaintiff Mitchell's star witness during a recess with a colored Juror (Mitchell is colored too) both of whom the trial judge admonished and told them to break it up."

■ It is apparent from the mere statement of the "point" that it fails to comply with the provisions of Rule 418, since it is multifarious, argumentative, and unduly prolix. While this court is committed to a liberal construction of the briefing rules

[Harris v. Texas Employers' Insurance Association, 447 S.W.2d 211, 215 (Tex.Civ. App.—Beaumont, 1969, error ref. n. r. e.)], we are in complete agreement with this expression taken from Johnson-Sampson Const. Co. v. W & W Waterproofing Co., 274 S.W.2d 926, 930 (Tex.Civ.App.—Amarillo, 1953, error ref. n. r. e.) :

"It has long been the policy of this Court to indulge a liberal construction in favor of the sufficiency of a brief and give effect thereto if we can do so without having to separate the several complaints made in one point and brief them separately ourselves. No such liberality of construction is contemplated by the Rules of Procedure governing such matters."

See the following additional authorities, generally in accord with this view: Appellate Procedure in Texas, § 12.4[4]; Kettle v. Smircich, 415 S.W.2d 935, 940 (Tex.Civ.App.—Corpus Christi, 1967, no writ); Hardeman v. Mitchell, 444 S.W.2d 651, 654 (Tex.Civ.App.—Tyler, 1969, no writ); International Security Life Ins. Co. v. Howard, 456 S.W.2d 765, 766 (Tex.Civ. App.—Waco, 1970, error ref. n. r. e.).

The point of error is not entitled to consideration, it being one of the most flagrant violations of the briefing rules with which we have come in contact. Nevertheless, and in order to make a disposition of this cause in such manner as to enable the Supreme Court to consider the entire case if presented to it by a proper application, we have considered the entire record in connection with the alleged jury misconduct.

■ The charge that juror Smith had said that Burleson was a crook and a thief, etc., does not rest upon undisputed testimony introduced upon the hearing. Two jurors (Troha and Shirley) swore that Mrs. Smith made the statement, although they did not say at what stage in the proceeding. Mrs. Smith denied having made the statement, and even denied that she had ever met Burleson before the trial.

Six other jurors testified that each was where he could have heard the statement, if made, and heard no such remark.

The trial court heard the witnesses and overruled the motion for new trial. No findings of fact or conclusions of law on the issue of misconduct were filed and none were requested. Under these circumstances, we are governed by the rule stated in Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 464 (1943):

> "If the evidence is conflicting on the question as to whether or not the misconduct actually occurred, the decision of the trial court either way on that question should be accepted as final."

See also, Brawley v. Bowen, 387 S.W.2d 383, 384 (Tex.Sup., 1965); Marchyn v. Silva, 455 S.W.2d 442, 446 (Tex.Civ.App. —San Antonio, 1970, error ref. n. r. e.).

■ Error is not presented when we come to consider the illiteracy of the juror Harrell. There is no showing that Burleson's counsel made any effort upon voir dire examination to learn Harrell's educational background, or lack thereof, and the matter was brought to the attention of the trial court for the first time upon the motion for new trial. The literacy requirement found in Subdivision 3, Article 2133, V.A.C.S., may be waived and when no inquiry is made at the time the jury is being empaneled, error is not shown. See the discussion found in Coca Cola Bottling Company v. Mitchell, 423 S.W.2d 413, 417–418 (Tex.Civ.App.—Corpus Christi, 1967, no writ).

■ This same juror, Harrell, was permitted to testify that he thought all the time that he was rendering a verdict for Burleson. Assuming the absolute truth of his statement, such constituted testimony involving the mental process of the juror, and runs afoul of the rule that a juror will not be permitted to preserve or to destroy his verdict by such testimony. See the cases discussed by Justice Stephenson in speaking for this court in Moses v.

Adams, 428 S.W.2d 131, 132 (Tex.Civ. App.—Beaumont, 1968, error ref. n. r. e.).

■ Third, Burleson's trial counsel both testified that they were aware of a conversation between the juror and the witness during the course of the trial but neither made any motion for mistrial but went to the jury in an effort to procure a verdict and raised the question of improper action affecting the verdict only after the unfavorable verdict. Under these circumstances, Burleson has waived his right to complain. Insurors Indemnity & Ins. Co. v. Brown, 172 S.W.2d 174, 177 (Tex.Civ.App.—Beaumont, 1943, error ref.). Cf. City of San Antonio v. McKenzie Construction Co., 136 Tex. 315, 150 S.W.2d 989, 993 (1941).

■ Furthermore, the trial judge was warranted in believing from the evidence introduced upon the hearing, corroborated at least to some extent by the testimony of the official court reporter, that the two women were talking about innocuous subjects, namely a hat and a baby, and not the case upon trial. Reversible error is not shown. Haynes B. Ownby Drilling Co. v. McClure, 264 S.W.2d 204, 208 (Tex.Civ. App.—Austin, 1954, error ref. n. r. e.).

From our discussion of the case, it is apparent that we have approved the action of the trial court in setting aside the finding that Mitchell had acquired title under the ten-year statute of limitation, but have disapproved its action in setting aside the finding that Jim Chambers was a stepson of Dock Chambers. By the same token, we have affirmed the trial court's action in entering judgment for Mitchell as an adopted son of Dock and Lucy Ann Chambers, and its action in denying Burleson's claim of title under the three, five, and ten-year statutes, as well as the overruling of the motion for new trial based upon jury misconduct.

The judgment rendered, however, is erroneous in that Jim Chambers is, under the finding of the jury which we have reinstated, the son of Lucy Ann Chambers and

entitled to share equally in her estate with Mitchell, her adopted son. Judgment should have been rendered in favor of Mitchell for an undivided three-fourths interest in and to the property in question with the remaining one-fourth awarded to Burleson, who holds under Jim Chambers' heirs.

The judgment which we now render is that which should have been rendered by the trial court, namely, the judgment below is now reformed and it is ordered that the appellant, Mitchell, do have and recover title and possession to an undivided three-fourths of the land described in the petition and that the appellee, Burleson, do have and recover the remaining one-fourth thereof. All costs in all courts are assessed three-fourths against Burleson and one-fourth against Mitchell.

Reformed and affirmed.